# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 03-1308

_____

United States of America,

          Appellant,

    v.

Pedro Dyck, also known as Pedro
Dyck-Peters.

          Appellee.

\*
\*
\*
\*     Appeal from the United States
\*     District Court for the
\*     District of North Dakota.
\*
\*
\*

_____

Submitted: February 13, 2003
Filed: July 1, 2003

_____

Before HANSEN,[1] Chief Judge, WOLLMAN and BYE, Circuit Judges.

_____

HANSEN, Circuit Judge.

Following a jury trial, Pedro Dyck was convicted of illegal reentry after deportation subsequent to an aggravated felony conviction in violation of 8 U.S.C. § 1326(a) and (b). At sentencing, the district court granted Dyck an acceptance-of-

_____

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

responsibility reduction and several downward departures. The government appeals the sentence, we vacate it, and remand for resentencing.

I.

In February 2002, the Immigration and Naturalization Service ("INS") ordered that Dyck be permanently removed from the United States after he was convicted of a federal drug-trafficking offense for attempting to smuggle approximately 84.4 pounds of marijuana into the United States through El Paso, Texas. He was sentenced to 12 months and one day of confinement and was released from confinement and deported on February 15, 2002. As part of the removal process, the INS issued Dyck a copy of Form I-294, which explicitly warned Dyck that he was being permanently removed from the United States and that it would be a crime later to enter or attempt to enter the United States without the consent of the Attorney General. Less than five months later, however, Dyck was arrested at the port of entry at Pembina, North Dakota, where he was attempting to reenter the United States. At the time of his arrest, Dyck stated to INS officials that he knew that he was barred from reentering the United States.

At sentencing, the district court, relying on United States Sentencing Guidelines § 5K2.0, departed downward from the relevant Guidelines imprisonment range. Dyck's total offense level was 20. See U.S. Sentencing Guidelines Manual § 2L1.2(a) and (b)(1)(B) (2002) (establishing a base offense level of 8 and providing for a 12-level enhancement where the defendant had been previously convicted of a felony drug-trafficking offense where the sentence imposed was 13 months or less). Dyck's five criminal history points placed him in criminal history category III, resulting in an imprisonment range of 41-51 months. In departing downward, the district court concluded that this case fell outside the heartland of cases contemplated by the Sentencing Commission. Specifically, the district court concluded that category III significantly overrepresented Dyck's actual criminal history, and it

2

reclassified him as a category II. The district court also thought it unfair that Dyck's prior conviction could be used both to increase his base offense level and to establish his criminal history category. It therefore reduced the 12-level enhancement required by § 2L1.2(b)(1)(B) to only four levels. The district court concluded that further departures were warranted because: (1) Dyck's Mennonite upbringing rendered him ignorant and uneducated; (2) Dyck did not enter the United States for illegal purposes as contemplated by the Guidelines, but only to use the better American highway system between Manitoba and Toronto; and (3) the conditions at the Grand Forks County jail facility in which Dyck was being held were almost cruel and unusual punishment. After concluding that Dyck was also entitled to a two-level acceptance-of-responsibility reduction even though he had gone to trial, the district court sentenced Dyck to seven months of time served. The government appeals the sentence.

II.

The Congress has provided that a district court shall sentence a defendant within the relevant Guidelines range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b) (2000). The Guidelines provide that "sentencing courts [are] to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." USSG Ch.1, Pt.A, 4(b), p.s. "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." Id. The district court is not left adrift, however, in determining which cases fall within and which cases fall outside of the "heartland." Koon v. United States, 518 U.S. 81, 94 (1996). The Sentencing Commission has provided "considerable guidance as to the factors that are apt or not apt to make a case atypical, by listing certain factors as either encouraged or discouraged bases for departure." Id. "If the special factor is

3

an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account." Id. at 96.  Where the factor is a discouraged factor or one already taken into account by the relevant Guideline, "the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Id.  The Commission has also provided a list of forbidden factors which the district court may not use as a basis for departure.  Id. at 95-96.

Prior to the enactment of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today (PROTECT) Act of 2003, Pub. L. No. 108-21, 117 Stat. 650 (2003), we would have reviewed the district court's downward departure under the unitary abuse-of-discretion standard described in Koon.  Section 401(d) of the PROTECT Act, however, requires us to consider de novo if the factor upon which the district court based its departure "(i) does not advance the objectives set forth in section 3553(a)(2);[2] or (ii) is not authorized under section 3553(b);[3] or (iii) is not justified by the facts of the case."  Because we would reverse the district court's downward departure in this case under either standard of review, we may assume without deciding that there is no legal barrier preventing Congress from changing the standard of review and then applying that new standard to a pending appeal.  We conclude that the stated grounds for departure here, whether taken in isolation or in

---

[2]The objectives are "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2).

[3]A district court may depart from the Guidelines range only if it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."  18 U.S.C. § 3553(b).

sum, do not support the district court's downward departure primarily because the district court relied upon forbidden factors and facts not reflected in the record.

## A.

We first turn to the district court's conclusion that Dyck's criminal history category overrepresented his actual criminal history. The Guidelines recognize that there may be cases where a defendant's criminal history category "significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes" thereby warranting a downward departure. USSG § 4A1.3, p.s. (emphasis added). The Guidelines cite as an example the "case of a defendant with [only] two minor misdemeanor convictions close to ten years prior to the instant offense." Id. Two things in the cited example strike us as being absent from this case: first, the prior convictions were minor, only misdemeanors; and second, the prior convictions were relatively remote in time. In contrast, Dyck was arrested for this offense only 6 months after he had been released from prison and deported for his last offense–the attempted importation of almost 90 pounds of marijuana. Indeed, Dyck was still on supervised release for his prior offense at the time he illegally reentered the United States. Accordingly, given the serious nature of the prior felony conviction and its temporal proximity to the instant offense, we conclude that the district court erred in concluding that Dyck's criminal history category III significantly overrepresented the seriousness of Dyck's criminal history.

## B.

We next address the district court's departures granted pursuant to USSG § 5K2.0.

We conclude that the district court abused its discretion in deciding to depart downward by applying only a four-level enhancement instead of a twelve-level

enhancement as required by § 2L1.2(b)(1)(B). As the district court correctly noted, the Guidelines provide that Dyck's prior drug-trafficking conviction be used both to enhance his base offense level and to compute his criminal history category. The district court concluded that this smacks of double counting and is unfair. (Findings for Departure under 5K2.0 at 2.) While recognizing that the Guidelines allow this result, the district court concluded that a four-level enhancement would be more appropriate because it would "reflect the actual seriousness of the defendant's conduct." (Id. at 4.) This was error. See United States v. Maul-Valverde, 10 F.3d 544, 547 (8th Cir. 1993) (discussing when departure under § 2L1.2(b)(2) might be appropriate, citing as an example a case where a defendant reenters the United States after having been deported 40 years prior and who remained out of the country during that 40-year span, and concluding that departure was not warranted because, among other things, the predicate aggravated felony conviction was "not particularly old").

The Commission has specifically countenanced that Dyck's prior conviction be used both to enhance his base offense level and to calculate his criminal history score. See USSG § 2L1.2, comment. (n.5) ("A conviction taken into account under subsection (b)(1) is not excluded from consideration of whether that conviction receives criminal history points."). We have previously rejected the double counting argument, concluding that it was reasonable for the Commission to punish certain previously deported aliens more severely than others. See United States v. Crawford, 18 F.3d 1173, 1179-80 (8th Cir.), cert. denied, 513 U.S. 860 (1994). The district court's mere "dissatisfaction with the available sentencing range or a preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range." USSG § 5K2.0, p.s., comment.; see also United States v. Wong, 127 F.3d 725, 727 (8th Cir. 1997).

The district court also attempted to justify the departure on the ground that § 2L1.2 does not account for a situation where, as here, the defendant played only a minor role in the prior drug-trafficking offense. We are of the view that the district

court's consideration of the defendant's role in the prior offense was an impermissible basis for granting a departure pursuant to USSG § 5K2.0. His role in the prior offense would have been addressed when he was sentenced for it.

Section 2L1.2 was wholly amended effective November 1, 2001, and it is the amended Guideline which applies in this case. See Supp. to USSG App. C, amend. 632. The amendment created a more nuanced sentencing scheme, providing for graduated sentencing enhancements of between 8 and 16 levels depending upon the seriousness of the prior felony conviction. The cause for the amendment was that § 2L1.2, as previously constituted, was perceived to result in disproportionate sentences between defendants because it required a 16-level enhancement for all persons reentering the United States after having been previously convicted of an aggravated felony without regard to the nature of their prior convictions. District courts had been remedying the perceived inequity on an ad hoc basis by granting departures. See id. The amendment deleted the application note which had authorized downward departures based on the seriousness of the prior aggravated felony. See id.; cf. USSG § 2L1.2, comment. (n.5) (2000). The Commission thus recognized that the amendment may have the result of "reducing the departure rate for cases sentenced under § 2L1.2." See Supp. to USSG App. C, amend. 632.

As now constituted, § 2L1.2 delineates different enhancements for prior drug-trafficking offenses depending upon the length of the sentence imposed for the prior conviction: a 16-level enhancement applies where the sentence imposed exceeded 13 months, and a 12-level enhancement applies where the sentence imposed was 13 months or less. Section 2L1.2 thus implicitly takes into account the defendant's role in the prior offense to the extent that the defendant's aggravating or mitigating role in the prior offense, if any, moved the defendant's sentence above or below the 13-month threshold relevant to prior drug-trafficking convictions. Any further consideration of the defendant's role in the prior offense is unwarranted under § 5K2.0; a defendant's minor role in the prior offense might be relevant in determining,

if anything, whether his criminal history category was overstated and whether a district court could grant a  departure pursuant to USSG § 4A1.3 (a conclusion concerning Dyck's history we have already rejected). See generally USSG 5H1.8, p.s. Such a departure would, of course, be reflected in a horizontal movement within the sentencing table, along the criminal-history-category axis.  Instead, the district court here attempted to use Dyck's purportedly minor criminal history to decrease the offense level pursuant to USSG § 5K2.0.  Such a departure reflects vertical movement within the sentencing table, along the offense-level axis.  We thus conclude that the district court erroneously conflated two distinct issues.  Just as a district court may not use § 4A1.3 to "open doors" that § 5K2.0 closes, see United States of America v. Aldaz-Loya, 221 F.3d 1344, 2000 WL 688228, at *1 (8th Cir. May 30, 2000) (unpublished),[4] the district court may not use § 5K2.0 to open doors that § 4A1.3 closes.  In other words, the district court may not grant a criminal-history-related departure under § 5K2.0 that would be unavailable under § 4A1.3.

The district court's conclusion that a departure was warranted because Dyck did not enter the United States for illegal purposes as contemplated by the Guidelines was also erroneous.  The district court concluded that "the guideline calculation at issue clearly contemplates a person entering the United States for a significant period of time to distribute drugs or conduct other illegal activities.  The defendant had no purpose of entering this country for any reason other than to travel to Toronto." (Findings for Departure under 5K2.0 at 5-6.)  This strikes us as a departure made pursuant to USSG § 5K2.11, p.s. (providing for departure where the offense "conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue").  We affirmed such a departure in United States v. White Buffalo, 10 F.3d 575, 577 (8th Cir. 1993).  In that case the defendant was convicted of illegally possessing an unregistered firearm in violation of 26 U.S.C. §

_____

[4]See 8th Cir. R. 28A(i).  In our judgment, this case, although unpublished, has persuasive value under our Rule and so we choose to cite it.

8

5861(d). White Buffalo testified that he had used the rifle only to shoot the varmints that were killing his chickens. The district court granted a downward departure pursuant to § 5K2.11 on the grounds that his "actions were not the kind of misconduct and danger sought to be prevented by the gun statute," White Buffalo, 10 F.3d at 576, and we affirmed on the ground that "the legislative history show[ed] the 'harm or evil' the law [sought] to prevent [were] violent crimes and loss of human life," id. at 576-77. Dyck's case is dissimilar, however.

The statute Dyke violated makes no reference to the purpose for which the defendant entered the country. Indeed, we have previously stated that in enacting § 1326, "Congress intended to establish a mala prohibita offense to assist in the control of unlawful immigration by aliens." United States v. Gonzalez-Chavez, 122 F.3d 15, 17 (8th Cir. 1997) (internal marks omitted). As such, we have previously rejected the argument that 8 U.S.C. § 1326 contains any specific intent element. Id. Just as a specific intent to enter unlawfully is not an element of the statute, neither is an intent to enter for unlawful purposes an element of the statute. Thus, this is not a situation where Dyck's conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue: the harm sought to be prevented is illegal reentry itself, for whatever purpose. It is enough that the defendant entered without the permission of the Attorney General of the United States after being convicted of a felony. Accordingly, we conclude that a departure pursuant to § 5K2.11 would not have been proper. Because the Sentencing Commission adequately considered "lesser harm" as a basis for downward departure under § 5K2.11, the district court was foreclosed from considering the "lesser harm" factor as a basis for departure under section 5K2.0. Cf. United States v. Petersen, 276 F.3d 432, 437 (8th Cir. 2002) (stating that because the Commission considered diminished mental capacity under § 5K2.13 as a basis for departure, the district court was foreclosed from considering the same factor as a basis for departure under § 5K2.0). Thus, Dyck's purported lack of criminal intent upon entry is not a valid basis for departing downward.

9

We turn next to the district court's assertion that the conditions at the Grand Forks County jail facility were so poor as to warrant a departure from the Guidelines. This factor is not listed in the Guidelines as a basis for departure. "If a factor is unmentioned in the guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland." United States v. Buckendahl, 251 F.3d 753, 758 (8th Cir.), cert. denied, 534 U.S. 1049 (2001) (quoting Koon, 518 U.S. at 95-96). We need not address the issue of whether conditions of confinement can serve as a basis for departure from the Guidelines. It is enough to note that the record here is utterly devoid of any facts supporting the proposition that the conditions at the Grand Forks County jail facility (which we assume has been inspected and approved by the United States Marshals Service as a proper place for housing federal detainees) were so substandard or onerous as to take this case out of the heartland of cases. There was no evidence presented to the district court regarding the conditions at the Grand Forks County jail facility. The district court thus abused its discretion in relying upon facts not in the record.

The district court's other asserted bases for departing downward do not support the departure. First, the district court concluded that Dyck's Mennonite upbringing left him ignorant and uneducated to the "ways of the world." To the extent that the district court's decision to depart downward was based upon its personal experience with and assessment of Mennonite culture, this was an improper basis for departure. See USSG § 5H1.10, p.s. (stating that national origin, creed, religion, and socioeconomic status are not relevant in the determination of a sentence). Likewise, "[l]ack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds for imposing a sentence outside the applicable guideline range." USSG § 5H1.12., p.s. The district court erred in relying upon these forbidden factors as a basis for departure. See Buckendahl, 251 F.3d at 758. To the extent that the district court's comments could be interpreted to mean that it departed

10

on the basis that the defendant lacked an adequate education, this factor is a discouraged basis for departure, see USSG § 5H1.2, p.s., and will only support the departure if it is "present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Buckendahl, 251 F.3d at 758 (quoting Koon, 518 U.S. at 95-96). The facts of this case belie any claim that Dyck's educational experience renders this case outside of the heartland of cases. Dyck attended school for seven years. He is conversant in the Low German, Spanish, and English languages. It also appears that Dyck has some vocational skill as a carpenter. In addition, Dyck's education was not so limited as to prevent him from knowing the difference between right and wrong. Dyck himself stated that he was brought up in a community that "had a very black and white picture of what is right and wrong." (PSIR at 4.) Accordingly, the district court erred in relying on these factors to justify its downward departure.

Finally, because we conclude that the district court erred in departing downward at all, we need not address the issue of whether the magnitude of the departure was unreasonable.

III.

The district court granted Dyck a two-level downward adjustment for acceptance of responsibility pursuant to § 3E1.1. The Guideline provides that:

> [t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a

11

> defendant goes to trial to assert and preserve issues that do not relate to factual guilt.

USSG § 3E1.1, comment. (n.2). The district court concluded that this was one of the "rare situations" in which a defendant was entitled to the reduction even though he exercised his right to trial. The district court reasoned that "the defendant did not dispute any of the essential elements of the crime, but instead relied on a defense of not 'wilfully' [sic] violating the law. This defense is not a defense to the crime charged and thus cannot be construed as a contest of any of the essential elements." (Findings for Departure under 5K2.0 at 7 n.4.) "We will not disturb a district court's decision to deny or grant a credit for acceptance of responsibility unless that decision is clearly erroneous. As with other findings of fact, the district court is in a unique position to evaluate a defendant's acceptance of responsibility." United States v. Searcy, 233 F.3d 1096, 1102 (8th Cir. 2000) (internal citations omitted).

We are of the opinion that the district court clearly erred in granting the acceptance-of-responsibility reduction. The inquiry is whether the defendant put the government to its proof by denying his factual guilt. Dyck's defense, even though not a legally valid one under the relevant statute, was a denial of factual guilt that put the government to its proof. This is distinct from, say, raising an insanity defense, or claiming that one's conduct was constitutionally protected, or asserting that one's conduct did not fall within the ambit of the statute. In this case, "[t]here were no stipulations of guilty conduct eliminating factual elements of guilt or limiting trial to a constitutional or statutory challenge." United States v. Field, 110 F.3d 592, 594 (8th Cir. 1997). In fact, Dyck has continued to blame the driver of the vehicle for entering the country without Dyck's knowledge or consent. These actions are inconsistent with one who has truly accepted responsibility for his actions. See id. (affirming denial of acceptance-of-responsibility reduction where the defendant put the government to its proof at trial, attempted to minimize his role in the offense, and

blamed his conduct on others). Accordingly, we conclude that the district court erred in granting Dyck a two-level reduction for acceptance of responsibility.

IV.

For the reasons stated above, Dyck's sentence is vacated, and the case is remanded to the district court with instructions to impose a sentence within the Guidelines range as determined initially by the district court for a Level 20, Criminal History Category III, offender.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.