**UNITED STATES of America, Plaintiff,**

v.

**Pedro DYCK, Defendant.**

**Criminal No. C2–02–45.**

United States District Court, D. North Dakota, Northeastern Division.

Oct. 16, 2003.

---

DeWayne A. Johnston, Olson Johnston, Grand Forks, ND, for Defendant.

Lynn C. Jordheim, U.S. Attorney, U.S. Attorney's Office, Fargo, ND, for Plaintiff.

### DISSENT UPON IMPOSITION OF SENTENCE

WEBB, District Judge.[1]

The Court imposes a sentence of 41 months upon the defendant. The Court bows to the intent and authority of the United States Court of Appeals for the Eighth Circuit, but respectfully disagrees with its decision in *United States v. Dyck,* 334 F.3d 736 (8th Cir.2003). The Court does not intend any disrespect towards its appellate court brethren, but rather writes this dissent to suggest an honest disagreement with the manner in which Federal Sentencing Guidelines are being applied as mandates to sentencing courts.

At the time of the original sentencing, the Court found, and still believes, that the case against Pedro Dyck falls outside the heartland of cases contemplated by § 2L1.2 of Federal Sentencing Guidelines. See Findings for Departure under 5K2.0, *United States v. Pedro Dyck,* C2–02–45, 2003 WL 22383497 (D.N.D. Jan. 31, 2003) (doc. 52) (Attachment A). At sentencing, this Court articulated its reasons for departure, each of which was summarily dismissed as inappropriate by the circuit court. This Court disagrees with the circuit court as far as the appropriateness of its reasons for departure, but the Court also disagrees because the interpretation of Guidelines mandating a certain sentence deprives the defendant of his right to individualized sentencing.

### I. Facts

In October of 2001, the defendant, a 19 year old Mennonite with a fourth grade education, was convicted of a federal drug trafficking offense for attempting to smuggle approximately 85 pounds of marijuana into the United States. At his sentencing, the district court in Texas recognized that he played a mitigating role in the offense, in essence the defendant acted as a mule. The court sentenced him to twelve months and one day imprisonment. After his release from prison in February of 2002, the Immigration and Naturalization Service ("INS") ordered him permanently removed from the United States.

The defendant, a naturalized Canadian citizen, returned to Rosendale, Manitoba to live with his brothers. At some point, the defendant decided to travel to Toronto, Ontario to visit friends. In July of 2002, he paid John Fehr to drive him to Toronto. John Fehr decided the best route from Manitoba to Toronto was through the

1. Appointed by President Ronald Reagan, 1981, United States Attorney for the District of North Dakota; Appointed by President Ronald Reagan, 1987, United States District Court for the District of North Dakota.

United States as he believed the highway system in the United States is far superior to the highway system in Canada. John Fehr, however, did not inform the defendant of his intentions to travel through the United States. The defendant was sleeping in the vehicle and awoke as the vehicle approached the border station near Pembina, North Dakota. The defendant informed the driver that he was not allowed in the United States, but Mr. Fehr told the defendant to remain silent and let him do the talking. At the port of entry, the border patrol officer became suspicious of the car's occupants. The defendant was subsequently arrested and charged with attempted reentry of a previously deported or removed alien, in violation of 8 U.S.C. § 1326(a).

The defendant proceeded to trial contending that he did not "willfully" violate the law. The Court rejected this defense and refused to instruct the jury on it. After a short trial, the jury convicted the defendant. The Court initially calculated the Guideline as a Net Offense Level 20, Criminal History Category III, dictating a 41 to 51 month sentence. At sentencing, the Court found that the case fell significantly outside the heartland of cases contemplated by § 2L1.2 and departed, imposing a sentence of 6 months upon the defendant. The United States appealed and the United States Court of Appeals for the Eighth Circuit vacated the sentence and remanded for re-sentencing, mandating a sentence within the 41–51 month range as initially calculated by this Court.

## II. Discussion

### A. Part One—Usurping of Discretion

Congress and the Sentencing Commission created the Sentencing Guidelines for the purpose of providing "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." USSG ch. 1, Pt. A (2002). The complete elimination of sentencing disparity is a noble task, but an impossible task due to the differing nature of every crime and every criminal. Sentencing is necessarily subjective and must be based on the individual and his or her crime. In fact, Congress recognized the necessity of individualized sentencing when it passed the legislation that prompted the Guidelines. *Koon v. United States*, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (citing 28 U.S.C. § 991(b)(1)(B)).

The Sentencing Commission recognized the inherent impossibility of completely objective sentencing and did not attempt to totally eliminate subjectivity in sentencing. For instance, the application of Guidelines such as § 3E1.1, § 4A1.3 and § 5K2.0 is subjective and calls for the exercise of sentencing discretion. The subjectivity of the Guidelines is no more evident than in the present case. This Court made a sincere attempt to sentence the defendant within the bounds of the Guidelines and believes each departure was a fact-based judgment call within its discretion. *United States v. Kapitzke*, 130 F.3d 820, 824 (8th Cir.1997) (noting that fact based judgment calls are within the discretion of the district court). The circuit court, however, disagreed with application of the Guidelines and substituted its own subjective viewpoint on the applicability of the Guideline provisions.[2]

The lack of deference frustrates this Court and the frustration is not limited to

---

**2.** Judge Gerald Heaney reveals disturbing statistics indicating that since May of 2000, 23/25 downward departures were overturned by the circuit court, while 44/46 upward departures were upheld by the same circuit court. *United States v. Yirkovsky*, 338 F.3d 936, 945 (8th Cir.2003) (Heaney J., dissenting).

the facts of this case. Before the Guidelines, district courts enjoyed almost unbridled discretion in sentencing. *Larson v. United States*, 835 F.2d 169, 172 (8th Cir. 1987). This unbridled discretion led to a wide disparity in sentencing whereas similarly situated defendants received wildly different sentences depending on the temperament of the sentencing judge. USSG, ch. 1, Pt. A. The Guidelines promote "uniformity" and "equality" by sentencing all defendants to undeniably harsh prison terms [3] and by allowing prosecutors, rather than judges, to select sentences based on the charges filed.

The Guidelines sacrifice on the alter of uniformity traditionally successful sanctions of the criminal justice system. The Guidelines rarely permit a sentence of probation, a sanction recognized to reduce recidivism. Substance abuse treatment as an alternative to incarceration likewise is not permitted by the Guidelines in any but minor cases. Drug courts, which have worked in some state jurisdictions, simply are not available in most Guideline cases. The Attorney General and the Bureau of Prisons no longer recognize half-way house or community confinement placements whenever incarceration is required by the Guidelines. In too many cases, the Court's only option is incarceration at a facility designated by the Bureau of Prisons.

As a result, record numbers of inmates reside in our prisons, in proportions embarrassing to a modern democratic society. Of course, Guidelines alone are not to blame. The advent of mandatory minimum sentences also divest sentencing discretion away from the sentencing judge. The wisdom of mandatory minimums has been publicly questioned by Chief Justice Rehnquist, Justice Kennedy and Justice Breyer, among others. "I can accept neither the necessity nor the wisdom of federal mandatory minimum sentences. In too many cases, mandatory minimum sentences are unwise or unjust," said Justice Kennedy. The recently enacted Protect Act removes nearly all discretion from the district courts by permitting the circuit courts to conduct a de novo review of a district court's decision to depart. The elimination of discretion at sentencing as dictated by the Protect Act should be worrisome to all interested in the criminal justice system.

For years, the Eighth Circuit and the Supreme Court jealously guarded the right of the district court to exercise sentencing discretion. See, e.g., Koon, 518 U.S. at 98, 116 S.Ct. 2035; *Williams v. United States*, 503 U.S. 193, 205, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992); *Solem v. Helm*, 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *United States v. Atkins*, 250 F.3d 1203, 1212 (8th Cir. 2001); *United States v. Ervasti*, 201 F.3d 1029, 1043 (8th Cir.2000); *United States v. Manzer*, 69 F.3d 222, 229 (8th Cir.1995); *United States v. Frondle*, 918 F.2d 62, 64 (8th Cir.1990); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir.1985). As the Supreme Court recognized in Koon, district courts enjoy distinct advantages in making determinations when to depart from Guideline ranges since district courts see many more Guideline cases than appellate courts do. 518 U.S. at 98, 116 S.Ct. 2035. The district courts also enjoy familiarity with history of the case and reap the benefits of face-to-face contact with the defendants, their families, and their victims.

---

**3.** One long serving federal judge recently resigned his position lamenting the distress he felt "at being part of a sentencing system that is unnecessarily cruel and rigid … I no longer want to be part of our unjust criminal justice system." Judge John S. Martin, Jr., Let Judges Do Their Jobs, N.Y. Times, June 24, 2003.

### B. Part Two—In Re: Pedro Dyck

In the matter of the sentencing of Pedro Dyck, this Court enjoys the exact advantages over the appellate court the Supreme Court was referring to in Koon. The Court is located in an agricultural border state and regularly sentences defendants involved in immigration and drug crimes. The sentencing judge has over forty years experience in criminal law as a defense attorney, prosecutor, and judge; and as a judge, has sentenced hundreds of defendants under the direction of the Guidelines. The Court participated in all aspects of the case from pre-trial matters to trial to sentencing. The Court has met the defendant, conversed with the defendant, and peered into the whites of the defendant's eyes. The district court is therefore in the better position to determine if this case falls outside the heartland of cases.

The present case falls outside the heartland of cases contemplated by § 2L1.2 because there is no just reason for a 41–51 month sentence. While there is no question the defendant broke the law by attempting to reenter the United States after having been previously deported subsequent to a conviction for a felony drug offense, there is also no question that the defendant played a mitigating role in his underlying conviction. The defendant was a mule, nothing more. The circuit court rejected consideration of the defendant's role in the prior offense as a basis for departure pursuant to § 5K2.0. *Dyck*, 334 F.3d at 740–41. The circuit court, however, fails to recognize

that § 2L1.2 opens the door for consideration of the defendant's role in the prior offense by utilizing that prior offense as a basis for enhancement. The circuit court also fails to recognize the injustice of enhancing a defendant's net offense level for a prior offense, while failing to consider the role in the prior offense as a basis for departure. The injustice increases in a situation such as the one set up by § 2L1.2 where only three relatively unspecific, unthoughtful and harsh enhancement levels are used to categorize conduct which § 2D1.1 labors to define with thirty-seven different options.[4] Therefore, this Court departed to remedy the inequity of § 2L1.2 as applied to the defendant with a departure under § 5K2.0.

As for the current offense, the defendant's attempt to reenter the United States was done for the purpose of using our superior highway system, not to distribute drugs or for some other illegal purpose as the Guideline range clearly contemplates. The circuit court stated in its opinion, Congress intended to establish a *mala prohibita* offense, therefore consideration of the purpose for which the defendant entered the country is improper. *Dyck*, 334 F.3d at 742. This Court agrees with that statement as far as the determination of guilt or innocence is concerned. As was previously stated by this Court, the defendant was rightfully convicted of the offense charged. However, when the time comes for sentencing a court should consider, as a mitigating or aggravating factor, the purpose for which a defendant

---

**4.** As the circuit court stated, prior to November 1, 2001, & sect; 2L1.2 provided for only two enhancements for a person convicted of a felony drug offense, an 8 level and a 16 level enhancement. *Id.* at 741. However, district courts across the nation recognized the inequity of the limited choices provided in § 2L1.2 and granted departures, encouraged within the Guidelines, to remedy the unfair-

ness. *Id.* The Sentencing Commission, recognizing the need for an additional category, added an additional enhancement, a 12 level enhancement. *Id.* However, even three enhancement levels (8, 12, 16) are inadequate to sufficiently categorize the range of circumstances surrounding the prior offenses which are used to justify the enhancement.

committed a crime. *Wasman*, 468 U.S. at 563, 104 S.Ct. 3217. Here, consideration of the purpose is especially important because the Guideline range as mandated by § 2L1.2 is so high proportionately to other offenses, the Sentencing Commission must have assumed that the defendant entered for the purpose of committing an illegal act at the time of the reentry or in the relatively near future. The defendant had no such purpose, thus he deserves a reduction in the net offense level under § 5K2.0.

The lack of discretion granted to the district court to apply Guidelines in a manner it deems just prevents the defendant from being sentenced as an individual as required by the Due Process Clause of the Fifth Amendment.[5] The concept of individualized sentencing is deeply rooted in our legal tradition and is a fundamental liberty interest. See *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (discussing individualized sentencing in a historical context); *Wasman v. United States*, 468 U.S. 559, 563, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) (declaring in a pre-Guidelines case the district court "must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed"); *Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (noting that judicial tradition requires the sentencing judge to "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and punishment

to ensue"); *United States v. Brittman*, 687 F.Supp. 1329, 1355 (E.D.Ark.1988), rev'd 872 F.2d 827 (8th Cir.1989) (holding that defendants enjoy a due process right to individualized sentencing); *United States v. Brodie*, 686 F.Supp. 941, 952 (D.D.C.1988)(concluding that the Sentencing Act's method of sentencing offends the principle of fair procedures and denies due process of law to defendants in criminal cases); *United States v. Frank*, 682 F.Supp. 815, 818 (W.D.Pa.1988), rev'd 864 F.2d 992 (3d. Cir.1988)(stating that the defendant has a due process right of opportunity to assure that the sentence imposed by this court is based upon circumstances unique to him). This due process right arises at sentencing because sentencing involves the most extreme deprivation of personal liberty and therefore calls for a highly individualized process where a person must be assessed and sentenced as an individual. *Brittman*, 687 F.Supp. at 1354 (citing *United States v. Barker*, 771 F.2d 1362, 1366 (9th Cir.1985)(announcing "punishment should fit the offender and not merely the crime")).

In *United States v. Brittman*, 872 F.2d 827, 828 (8th Cir.1989), the Eighth Circuit reversed the district court's finding that the Guidelines were facially unconstitutional. *Id.* The Eighth Circuit did not, however, rule out a due process challenge to the Guidelines as applied in individual cases. *Id.* In its analysis of the Guidelines the circuit court found it significant, among other considerations, that the "sentencing judges retained discretion ... to consider

---

**5.** In the absence of guidance from the Supreme Court in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), federal circuit courts have considered and rejected substantive and procedural due process challenges to the Guidelines. *United States v. Seluk*, 873 F.2d 15 (1st Cir.1989); *United States v. Vizcaino*, 870 F.2d 52, 55–57 (2d Cir.1989); *United States v. Frank*, 864

F.2d 992, 1008–09 (3d Cir.1988); *United States v. Bolding*, 876 F.2d 21 (4th Cir.1989); *United States v. White*, 869 F.2d 822, 825 (5th Cir.); *United States v. Allen*, 873 F.2d 963 (6th Cir.1989); *United States v. Pinto*, 875 F.2d 143 (7th Cir.1989); *United States v. Brittman*, 872 F.2d 827, 828 (8th Cir.1989); *United States v. Thomas*, 884 F.2d 540, 544 (10th Cir.1989).

adjusting the base level for mitigating and aggravating circumstances, ... and to determine when to depart from the Guidelines." *Id.* Thus, a critical aspect of the circuit court's holding was the district court retained "some discretion, some power to fit sentences to the individual offender."[6] *Id.* This Court is of the view that the Guidelines as applied by the circuit court to the defendant violate due process as its interpretation robs the district court of all discretion necessary to sentence the defendant as an individual. In effect, the circuit court interprets Guidelines in such a fashion that it mandates or conclusively presumes a 41–51 month sentence, which this Court believes deprives the defendant of his constitutional right to due process. *United States v. Elliott,* 684 F.Supp. 1535, 1541 (D.Colo.1988)(stating conclusive presumptions have consistently been held to constitute a denial of due process)(citing *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *United States v. Brown,* 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965); *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)).

### III.Conclusion

By this dissent, the Court submits that the pendulum for sentencing within the criminal justice system has moved too far to the right in favor of harsh sentences. We must adopt sentencing goals beyond retribution and deterrence. Our current system costs too much and we are in danger of losing a substantial portion of a whole generation of young men to drugs as their futures rot within our prisons. A society can be tough on crime without being vindictive, unjust or cruel. We must encourage flexible and innovative sentencing such as drug courts, drug treatment and supervised probation as an alternative to prison. Change is hard, but change is not impossible. Judges and others involved in the criminal justice system must speak out against unjust and unwise mechanisms of justice such as strict guidelines and mandatory minimum sentences. The Feeney Amendment can be changed by appealing to our congressional delegation. Perhaps this opinion, as an appeal for a restoration of individualized sentencing, will provoke some thoughtful discussion on these important issues and help restore the traditional sentencing discretion of the

---

**6.** The court was careful to add, citing a nonbinding plurality opinion in *Lockett v. Ohio,* 438 U.S. 586, 603, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), "the Constitution does not guarantee individualized sentencing, except in capital cases." *United States v. Brittman,* 872 F.2d 827, 828 (8th Cir.1989). In Lockett, the plurality found that in non-capital cases "the established practice of individualized sentences rests, not on constitutional commands, but on public policy enacted into statutes." 438 U.S. at 604–05, 98 S.Ct. 2954. This Court disagrees with the plurality; individualized sentences in non-capital cases are just as rooted in the Constitution as individualized sentences in capital cases. The fundamental respect for justice underlying the Fifth Amendment, capital or non-capital, requires consideration of the character of the individual offender and the circumstances of the particular offense as a constitutionally indis-

pensable part of the process of depriving a defendant of his life or liberty. Cf. *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). In the era of Guidelines, perhaps even the plurality would agree with this Court considering that one of the reasons the plurality articulated for the necessity of individualized sentencing in capital cases is the lack of flexibility and corrective mechanisms. *Lockett,* 438 U.S. at 605, 98 S.Ct. 2954. In the present era, there is almost a complete lack of flexibility and corrective measures available to the district court in non-capital cases. Probation is severely limited and discouraged, parole is abolished, work furloughs nearly nonexistent, and the availability of post-conviction remedies to non-capital defendants pale in comparison to the remedies available to capital defendants.

district courts usurped by the legislative and executive branches of our government.

For all the above-mentioned reasons, the Court respectfully dissents from the opinion of the circuit court that mandates the sentence it must impose upon Pedro Dyck.