[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-10946

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 27, 2004
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-00028-CR-ORL-31-KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JOSE SAUCEDO-PATINO,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 27, 2004)**

Before BLACK, HULL and COX, Circuit Judges.

BLACK, Circuit Judge:

Defendant-Appellee Jose Saucedo-Patino pled guilty to illegal reentry after deportation subsequent to an aggravated felony conviction. At sentencing, the district court granted Saucedo-Patino an 8-level downward departure based on (1) the nature of his prior conviction, and (2) his claim that he reentered the United States to support his family. The Government appeals the sentence, which we vacate and remand for resentencing.

## I. BACKGROUND

Following his deportation from the country after being convicted on a felony charge of burglary in a habitation with intent to commit aggravated assault, Saucedo-Patino reentered the United States without authorization, only to be caught. He pled guilty to violating 8 U.S.C. §§ 1326(a)(2) and (b)(2), which prohibit reentering the United States after being deported following a conviction for an aggravated felony.

In the Presentence Investigation Report, the Probation Office calculated Saucedo-Patino's offense level pursuant to the Sentencing Guidelines, which provided for a base offense level of 8 for violating § 1326 and an additional 16-level increase, given that the prior conviction was for a crime of violence.[1]

---

[1] The commentary specifies that burglary of a dwelling is a "crime of violence." U.S.S.G. § 2L1.2, cmt. n.1(B)(ii)(II) (2002).

U.S.S.G. § 2L1.2 (2002). Taking into consideration a 3-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, the Probation Office determined that Saucedo-Patino had a total offense level of 21, with a criminal history category of IV, for a total guideline imprisonment range of 57 to 71 months.

At sentencing, Saucedo-Patino argued that, as a convicted burglar, he did not deserve to receive the same sentence under § 1326 as a person that had previously been convicted of murder. He further argued that the burglary he committed was more properly understood as a domestic dispute, given that the apartment he "burgled" belonged to his estranged wife, and he only entered because he was concerned about the welfare of their daughter. Saucedo-Patino also noted that his estranged wife has since acknowledged that he pays child support, has a good relationship with their daughter, and takes care of her during vacations. Finally, Saucedo-Patino urged the district court to make allowances for the fact that he reentered the country to find work and support his family, as opposed to reentering with criminal intentions.

After concluding that an 8-level downward departure was appropriate under U.S.S.G. § 5K2.0, the district court determined that Saucedo-Patino's total offense level was 13, which corresponded to a sentence range of 18 to 24 months'

imprisonment. The district court then sentenced Saucedo-Patino to 18 months'
imprisonment.

The Government appeals the grant of the downward departure.

## II. STANDARD OF REVIEW

The relevant statute previously instructed the federal appellate courts to
"give due deference to the district court's application of the guidelines to the
facts." 18 U.S.C. § 3742(e) (2000). Accordingly, the appellate courts reviewed a
district court's decision to depart downward for an abuse of discretion.[2] *See Koon
v. United States*, 518 U.S. 81, 98–100, 116 S. Ct. 2035, 2046–48 (1996). On April
30, 2003, however, Congress enacted the PROTECT Act.[3] Section 401(d) of the
PROTECT Act amended § 3742(e)(3)—the provision on which *Koon* relied—to
provide:

> Upon review of the record, the court of appeals shall determine whether the
> sentence—
>
>  . . . (3) is outside the applicable guideline range, and
>
>> (A) the district court failed to provide the written statement of
>> reasons required by section 3553(c);

---

[2] "A district court abuses its discretion when it fails to apply the appropriate legal
standard, follows improper procedures, or relies upon clearly erroneous findings of fact." *Sierra
Club v. Hankinson*, 351 F.3d 1358, 1361 (11th Cir. 2003).

[3] The Act's full name is the Prosecutorial Remedies and Other Tools to end the
Exploitation of Children Today Act of 2003. Pub. L. No. 108-21, § 1, 117 Stat. 650 (2003).

(B) the sentence departs from the applicable guideline range based on a factor that—

(i) does not advance the objectives set forth in section 3553(a)(2); or

(ii) is not authorized under section 3553(b); or

(iii) is not justified by the facts of the case; or

(C) the sentence departs to an unreasonable degree from the applicable guidelines range, having regard for the factors to be considered in imposing a sentence, as set forth in section 3553(a) of this title and the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); . . .

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and, except with respect to determinations under subsection (3)(A) or (3)(B), shall give due deference to the district court's application of the guidelines to the facts. *With respect to determinations under subsection (3)(A) or (3)(B), the court of appeals shall review de novo the district court's application of the guidelines to the facts.*

(emphasis added).

Saucedo-Patino was sentenced before the PROTECT Act was enacted. Thus, before we can apply the changed standard of review, we must first determine whether doing so would violate the Ex Post Facto Clause of Article I, section 9 of the Constitution, which provides that "[n]o . . . ex post facto Law shall be passed." *See United States v. Grimes*, 142 F.3d 1342, 1350 (11th Cir. 1998) ("[A]pplication of amended statutes to crimes committed before the amendment is suspect and must be carefully scrutinized."). We join the other circuits that have

5

considered this issue and agree that applying the changed standard of review retroactively does not violate the Ex Post Facto Clause. *See, e.g.*, *United States v. Stockton*, 349 F.3d 755, 764 n.4 (4th Cir. 2003); *United States v. Mallon*, 345 F.3d 943, 946–47 (7th Cir. 2003); *United States v. Hutman*, 339 F.3d 773, 775 (8th Cir. 2003).

A law violates the Ex Post Facto Clause only if it "'retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts.'" *California Dep't of Corrs. v. Morales*, 514 U.S. 499, 504-05, 115 S. Ct. 1597, 1601 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S. Ct. 2715, 2719 (1990)). In this case, changing the standard of review does not retroactively alter the definition of Saucedo-Patino's crime. Nor does it increase the punishment for the underlying criminal act. Granted, Saucedo-Patino may ultimately receive a longer sentence as a result. If he does, however, it will be because the guidelines were improperly applied and correction is required—not because the applicable substantive law has changed. As the Seventh Circuit noted, § 401(d) of the PROTECT Act merely changes "*who* within the federal judiciary makes a particular decision, . . . not the legal standards for that decision." *Mallon*, 345 F.3d at 946. We hold that applying § 401(d) of the PROTECT Act retroactively

6

does not violate the Ex Post Facto Clause. Therefore, we review the sentence departure de novo.

## III. DISCUSSION

In this case, there is no dispute either that burglary is a crime of violence or that the 16-level increase was properly applied. The only issues are (1) whether the district court possessed the authority to depart downward 8 or more levels based on the nature of the underlying offense, (2) whether Saucedo-Patino's employment history and family responsibilities are outside the heartland, and (3) whether Saucedo-Patino's motive for reentering the country is relevant to the determination to depart.

A. *The Nature of the Underlying Offense*

A brief review of how the relevant guideline has evolved confirms that the district court lacked the authority to depart downward 8 or more levels on these facts.

Section 2L1.2(b)(1) used to require that the offense level be increased by 16 if the defendant had a prior conviction for *any* aggravated felony. U.S.S.G. § 2L1.2(b)(1)(A) (2000). Because the seriousness of the prior aggravated felony could vary greatly, the commentary contained a note suggesting that downward

departures might be warranted in some of the less serious cases. *Id.* cmt. n.5. In response to this disparity, the Sentencing Commission modified the guideline.

Section 2L1.2(b)(1) now distinguishes among assorted types of aggravated felonies. *See* U.S.S.G. § 2L1.2(b)(1) (2002). Most significantly, the section currently distinguishes between aggravated felonies like burglary that are also defined as crimes of violence and less serious aggravated felonies that are not. *Compare id.* § 2L1.2(b)(1)(A)(ii), *with id.* § 2L1.2(b)(1)(C). For the sake of convenience, we refer to these categories as "crimes of violence" and "simple aggravated felonies," respectively.

If the prior conviction is for a crime of violence, the base sentencing level is increased by 16 levels. *Id.* § 2L1.2(b)(1)(A)(ii). If, however, the prior conviction is for a simple aggravated felony—i.e., one that is not a crime of violence—the increase is only 8 levels. *Id.* § 2L1.2(b)(1)(C).

When the Sentencing Commission modified § 2L1.2(b)(1) to expressly distinguish between crimes of violence and simple aggravated felonies, it also removed the note concerning downward departures because it determined that the amended graduation of increases negated the need for the departure provision. U.S.S.G. supp. to app. C., amend. 632, at 218–19 (2002). Given that Saucedo-Patino fails to otherwise advance a valid basis for departing, *see infra* Parts

III.B–C, if we were to affirm the grant of the 8-level downward departure here, our only basis for doing so would be the nature of the underlying offense. Saucedo-Patino would then be sentenced as if he had been convicted of only a simple aggravated felony instead of a crime of violence. Given that the Commission chose to distinguish between these two categories—by requiring increases of 8 and 16 levels, respectively—we must enforce the distinction. Thus, we hold that, regardless of the circumstances, a sentencing court lacks the authority to treat a crime of violence as if it were not, in fact, a crime of violence. More specifically, on these facts, a sentencing court is categorically prohibited from departing downward 8 or more levels where its only basis for doing so is the nature of the underlying offense.[4]

B.   *Employment History and Family Responsibilities*

Saucedo-Patino argues that the district court properly took his employment history and family responsibilities into account when determining whether to depart downward. In his view, he should receive a lighter sentence, given that his estranged wife has acknowledged that he pays child support, has a good relationship with his daughter, and takes care of her during vacations.

---

[4] We need not and specifically do not reach the issue whether a departure of less than 8 levels might be warranted.

9

We disagree. The guidelines expressly state that employment history and family responsibilities are not usually relevant in determining whether a sentence should fall outside the usual guideline range. *See* U.S.S.G. §§ 5H1.5 & 5H1.6. Moreover, our review of the record does not suggest that there are any specific aspects of Saucedo-Patino's employment history or family responsibilities that are so exceptional as to take this case outside the heartland.[5] *See United States v. Mejia*, 309 F.3d 67, 71 (1st Cir. 2002) (reaching the same result on similar facts). Accordingly, these factors may not serve as a basis for departure in this case.

C. *Motive for Reentry*

Saucedo-Patino argues that his motive for reentering the United States—supporting his family—did not involve an intent to commit further crimes and that it was appropriate for the district court to take this motive into account. In support, Saucedo-Patino cites U.S.S.G. § 5K2.11, which states that departure may be warranted where the defendant's "conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue."

---

[5] If the guidelines discourage the consideration of a particular factor, a sentencing court should only depart based upon that factor if it is present to an exceptional degree or in some other way makes the case different from the ordinary cases where the factor is present—the "heartland." *Koon*, 518 U.S. at 96, 116 S. Ct. at 2045.

Again, we disagree. Saucedo-Patino's motive for reentering is irrelevant. As the Eighth Circuit observed, the only harm 8 U.S.C. § 1326 is aimed at preventing "is illegal reentry itself, for whatever purpose." *United States v. Dyck*, 334 F.3d 736, 742 (8th Cir. 2003). All that matters in this case is that Saucedo-Patino "entered without permission . . . after being convicted of a felony." *Id.* Thus, his motive for reentry should not factor into the decision whether to depart downward.

## IV. CONCLUSION

We hold that a sentencing court lacks the authority to treat a crime of violence as if it were not, in actuality, a crime of violence. Thus, a sentencing court may not, on these facts, depart downward 8 or more levels based solely on the seriousness of the prior offense. Even if a lesser departure is warranted, neither Saucedo-Patino's employment history nor his family responsibilities are outside the heartland; thus, we hold that neither factor may serve as a basis for departure. Also, we hold that Saucedo-Patino's motive for reentering the United States is simply irrelevant to the determination whether to depart.

The relevant provision of the PROTECT Act applies retroactively; thus, we review de novo the district court's downward departure decision. Applying this standard, we hold that even if one or more of the bases for the district court's

11

downward departure were authorized, the district court's 8-level downward departure was not justified by the facts of this case.

For these reasons, Saucedo-Patino's sentence is vacated, and the case is remanded to the district court with instructions to impose a sentence in accordance with this opinion.

VACATED and REMANDED.