**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 26, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ARLETTE Y. HERNANDEZ-BAIDE,

    Defendant-Appellant.

No. 04-3101
(D. Kan.)
(D.Ct. No. 03-CR-10072-MLB)

---

**ORDER ON REMAND FROM THE SUPREME COURT**
**OF THE UNITED STATES**

---

Before **TACHA**, Chief Circuit Judge, and **PORFILIO** and **BRORBY**, Senior
Circuit Judges.

---

    This case is before us after being vacated and remanded by the United
States Supreme Court for further consideration in light of *United States v. Booker*,
543 U.S. \_\_\_, 125 S. Ct. 738 (2005). *See Hernandez-Baide v. United States*, \_\_\_
U.S. \_\_\_\_, 125 S. Ct. 1993 (2005). Ms. Hernandez-Baide pled guilty to one count
of illegal reentry of a deported alien previously convicted of an aggravated
felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). *See United States v.
Hernandez-Baide*, 392 F.3d 1153, 1154 (10th Cir. 2004). On appeal, we affirmed
the district court's denial of a downward departure under the lesser harms

provision contained in United States Sentencing Commission, *Guidelines Manual* (U.S.S.G.) § 5K2.11. *Id.* at 1155, 1158-59. While Ms. Hernandez-Baide's case was pending before this court on the Supreme Court's remand, the government filed a motion to dismiss her appeal as moot, to which Ms. Hernandez-Baide objected. After consideration of the parties' arguments, we grant the government's motion, dismiss Ms. Hernandez-Baide's appeal on remand as moot, and reinstate our prior decision affirming her conviction and sentence.

The circumstances surrounding Ms. Hernandez-Baide's underlying guilty plea, conviction, and sentence are more fully set forth in our prior decision. *Id.* at 1153-59. On January 21, 2005, following our disposition of her appeal, Ms. Hernandez-Baide satisfied her prison sentence and was released from imprisonment, and on February 9, 2005, the federal government deported Ms. Hernandez-Baide from the United States to Honduras.

On January 12, 2005, during the pendency of Ms. Hernandez-Baide's appeal to the Supreme Court, it decided *United States v. Booker*, in which it determined the Sentencing Guidelines should be applied in an advisory rather than a mandatory capacity. 543 U.S. at ___, 125 S. Ct. at 764-65. While Ms. Hernandez-Baide did not raise an *Apprendi*-, *Blakely*-, or *Booker*-related issue on

direct appeal, she apparently raised such an issue in her appeal to the Supreme Court, and on May 2, 2005, it vacated our previous decision and remanded Ms. Hernandez-Baide's appeal to us for consideration in light of *Booker*. *See Hernandez-Baide v. United States*, ___ U.S. at ___, 125 S. Ct. at 1993. This court then ordered the parties to file briefs, in conjunction with *Booker*, regarding the mandatory sentence imposed by the district court. We now address the issues raised by the government in its intervening motion to dismiss Ms. Hernandez-Baide's appeal as moot.

While the government concedes *Booker* error occurred in the mandatory sentencing of Ms. Hernandez-Baide, it suggests her appeal is moot because she: 1) satisfied her term of imprisonment; 2) has been deported to her native country of Honduras; 3) is barred for life from reapplying for admission to the United States, based on her prior California conviction for possession of cocaine base with intent to distribute; and thereby 4) is unavailable for resentencing with respect to her three-year supervised release and not subject to any collateral consequences stemming from the error alleged. In support, it argues that under *Spencer v. Kemna*, 523 U.S. 1 (1998), and *United States v. Meyers*, 200 F.3d 715 (10th Cir. 2000), this court lacks jurisdiction to remand for the purpose of resentencing Ms. Hernandez-Baide, as she is permanently banned from reentering

this country under 8 U.S.C. § 1182(a)(2)(A)(i)(II).  Ms. Hernandez-Baide counters

that her case is not moot so long as she is under a term of supervised release and

that the district court could, under a *Booker* advisory sentencing scheme, impose a

lesser or no term of supervised release.

In *Meyers*, we explained:

> When an incarcerated criminal defendant appeals his conviction, the ongoing incarceration constitutes an injury from which the defendant seeks relief in satisfaction of Article III.  ...  If, however, that same defendant completes his sentence prior to the appellate court decision, the court must determine whether sufficient collateral consequences flow from the underlying judgment and the completed sentence to save the appeal from mootness.

200 F.3d at 718 (relying on *Spencer*, 523 U.S. at 7-8).  While we acknowledged

past Supreme Court precedent established "a presumption of sufficient collateral

consequences when a defendant who has already served his sentence appeals the

propriety of his initial conviction," we also noted that in *Spencer* "the Court

declined to extend this presumption of collateral consequences to challenges of

parole termination." *Id.* at 718.  We then declined to extend the presumption of

collateral consequences to supervised release, stating, "when a defendant appeals

the revocation of his supervised release and resulting imprisonment and has

completed that term of imprisonment, the potential impact of the revocation order

and sentence on possible later sentencing proceedings does not constitute a

-4-

sufficient collateral consequence to defeat mootness." *Id.* at 722. We further recognized that under *Spencer* collateral consequences cannot be based on the speculation that an individual will receive an enhanced sentence in future sentencing proceedings in connection with a crime he has not yet committed. *Id.* at 719 (relying on *Spencer,* 523 U.S. at 13-15). Finally, we determined the appellant bears the burden of demonstrating the existence of sufficient collateral consequences to save the action from mootness. *Id.* at 722.

Drawing on the principles explained in *Spencer* and *Meyers*, we find the collateral consequence suggested by Ms. Hernandez-Baide concerning resentencing for a lesser or no term of supervised release is more than speculative. To begin, Ms. Hernandez-Baide is no longer within the jurisdiction of any court of the United States, including the district court, for the purpose of resentencing. The situation is compounded by the fact that her return to this country is prohibited, given her prior drug conviction bars her for life from reapplying for admission to the United States. As the Second Circuit pointed out in a similar situation, a defendant's prior drug trafficking conviction rendering entry into the United States inadmissible would result in "only a quixotic chance of legally returning to the United States." *See United States v. Mercurris*, 192 F.3d 290, 294 (2d Cir. 1999) (determining that inadmissible reentry issue made possibility that

defendant's aggravated felon status "could make a difference to him under the immigration statutes ... too speculative to create an Article III case or controversy"). Even if Ms. Hernandez-Baide did enter the United States and was prosecuted for committing another crime, we find it highly unlikely a reduction in her supervised release would have the collateral consequence of affecting any future sentence. Thus, we decline to find collateral consequences exist based on the mere speculation Ms. Hernandez-Baide may some day return to the United States (albeit illegally) and receive an enhanced sentence in connection with a crime she has not yet committed. For these reasons, we find Ms. Hernandez-Baide has not carried her burden of showing the existence of sufficient collateral consequences to save the action from mootness.

Accordingly, we **GRANT** the government's motion, **DISMISS** Ms. Hernandez-Baide's appeal on remand as moot, and **REINSTATE** our prior decision affirming her conviction and sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge