[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 19, 2004**
**THOMAS K. KAHN**
**CLERK**

No. 03-10877
Non-Argument Calendar

D. C. Docket No. 02-00115-CR-T-27-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE BLAS,
a.k.a. "Joe,"

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Florida

**(February 19, 2004)**

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

Jose Blas appeals his sentence for two counts (Counts One and Three) of attempt to persuade and coerce an individual under the age of eighteen to engage in a sexual act, pursuant to 18 U.S.C. § 2422(b), and one count (Count Two) of travel in interstate commerce for the purpose of engaging in a sexual act with an individual under the age of 18 years, pursuant to 18 U.S.C. § 2423(b). Upon review of the record, we find no error in the imposition of Blas's sentence.

## Background

In June 2001, Blas, a 48 year old male, began communicating by computer with a fifteen-year-old Florida girl ("Victim 1"). Blas testified that he initially told Victim 1 that he was eighteen years old, but that two weeks later, he admitted to being forty-seven. When asked on cross-examination why he lied about his age, he stated that he had established a relationship with Victim 1, and did not want to lose her friendship. Blas and Victim 1 communicated for several months during which he encouraged her to believe she was his girlfriend. Blas indicated that he intended to "make L-U-V" to her. In December 2001, Blas traveled from New York to Florida and met Victim 1. Blas took Victim 1 to lunch at a restaurant, and then to a motel room where they engaged in vaginal, anal, and oral sex.[1] Blas then

---

[1] At Blas's sentencing, a local police officer with whom Victim 1 had spoken after the incident testified that Victim 1 told her that Blas had used a condom. While the officer indicated that she did not believe Victim 1, there was no other evidence to suggest that Blas did not use a

2

took Victim 1 home and returned to New York. At the time, Blas was aware, as he had been for several years, that he was infected with the HIV virus.

In January 2002, Blas began communicating by computer with a fourteen-year-old Florida girl ("Victim 2"). Blas and Victim 2 engaged in numerous telephone calls, during which they discussed sex and their relationship for several hours. On several occasions via webcam, Blas exposed himself to Victim 2 and masturbated. Blas told Victim 2 he was seropositive, but claimed she could not catch HIV from him because of the medications he was taking. Blas had planned on coming to visit Victim 2 to have sex with her in Summer 2002, but was arrested before they could meet.

Blas agreed to plea guilty to all counts without a plea agreement. At his plea colloquy, Blas denied having had anal sex with Victim 1, and disagreed with some of the statements he was reported to have made to Victim 2. However, he otherwise agreed that the facts as presented by the government were correct.

The probation office's presentence investigation report ("PSI") placed the three offenses into two groups, with the two counts involving Victim 1 (Counts One and Two) in one group, and the sole count involving Victim 2 (Count Three) in the other group. For the first group, the PSI set the base offense level at 24,

---

condom. Victim 1 was not available to testify at the sentencing.

because the offense involved the completion of a sexual act, pursuant to § 2A3.2(a)(1) United States Sentencing Guidelines.[2] The PSI then added two offense-specific characteristics: 1) a two-level increase for knowing misrepresentation of identity (§ 2A3.2(b)(2)(A)), based on Blas's representation to Victim 1 of being eighteen years old; and 2) a two-level increase for use of the Internet (§ 2A3.2(b)(3)(A) and (B)). Once adjusted, Blas's offense level for the first group was 28.

For the second group, because the offense did not involve sexual contact, the PSI set the base offense level at 21 (§ 2A3.2(a)(2)). The PSI included two offense-specific characteristics: 1) a two-level increase for undue influence (§ 2A3.2(b)(2)(B)); and 2) a two-level increase for use of the Internet (§ 2A3.2(b)(3)(A) and (B)). Once adjusted, Blas's offense level for the second group was 25.

After a two level multiple count adjustment (§ 3D1.4), Blas's combined adjusted offense level was 30. The PSI then subtracted three levels for acceptance of responsibility and cooperation with authorities (§ 3E1.1(a) and (b)). The resulting offense level was 27. Blas had a criminal history category of I, which

---

[2] Hereafter, provisions of the Sentencing Guidelines will be cited as "§ X."

4

resulted in a punishment range of 70-87 months' incarceration and two to three years' supervised release.

Blas objected to the misrepresentation of identity enhancement, and to the possibility of an upward departure. Blas claimed that he informed Victim 1 of his HIV status before he went to Florida, and indicated that they had used condoms. Blas said that he had informed Victim 1 of his true age within two weeks of their first communication. The district court, finding that a misrepresentation of one's age to gain the confidence and trust of a victim fit within "the essence" of § 2A3.2(b)(2)(A)'s enhancement for misrepresenting identity in order to "persuade, induce, entice, or coerce" a minor victim to engage in prohibited sexual conduct, thereby overruling Blas's objection.

The government, raising no objection to the PSI, moved for an upward departure on three grounds: 1) extreme conduct (§ 5K2.8) based on, *inter alia*, Victim 1's age, Blas's infection with HIV and failure to inform Victim 1 of his medical condition; 2) the use of dangerous weapons and dangerous instrumentalities (§ 5K2.6), arguing that Blas's conduct, in light of his disease, was akin to the use of a deadly weapon; and 3) atypical case (§ 5K2.0), based on the uniqueness of the circumstances.

At sentencing in December 2002, the district court denied the requested "dangerous weapon" departure. With regard to the government's motion for an "extreme conduct" upward departure, the district court noted that it was undisputed that Blas knowingly carried a potentially fatal disease. As the court stated, despite his awareness of his status and the risks involved, Blas engaged in numerous sexual acts with a fifteen-year-old girl. The court thereby found that, regardless of the possible use of a condom, multiple sex acts increased the risk of transmission. The court also noted that, because of the nature of her contact with Blas, Victim 1 would be subject to repeated HIV testing, fear of having contracted the disease, and other psychological trauma. Quoting § 5K2.8, the district court found that Blas's behavior constituted an "unusually heinous, cruel, and degrading act toward a minor," thus meriting the upward departure. Tr. Sent. Hr'g at 43.

The court alternatively found that Blas's conduct, namely the exposure of a young victim to a potentially fatal disease through sexual relations, took the matter out of the heartland of cases, and ruled that an upward departure for atypical case was warranted.

For the offenses involving Victim 1, the court departed upward to offense level

34, which had a guideline range of 151 to the statutory maximum of 180 months. The court sentenced Blas to 180 months' incarceration on Counts One and Two and 70 months' incarceration on Count Three, to be served concurrently, to be followed by three years' supervised release, concurrently, on each count. The court also imposed a $15,000 fine, and ordered Blas to pay $86 in restitution and a $300 special assessment.

Blas now appeals, arguing 1) that the district court erred in applying the two-level offense characteristic for misrepresenting his age; and 2) that the district court erred in applying an upward departure for extreme conduct and atypical case.

## Discussion

The district court's interpretation of the Sentencing Guidelines is a question of law we review de novo. *See United States v. Miranda*, 348 F.3d 1322, 1330 (11th Cir. 2003) (per curiam). However, a district court's finding with regard to a defendant's intent is reviewed for clear error. *See id.*

Traditionally, the question of whether the facts of a case supported a departure has been reviewed for abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 96-100 (1996). However, on April 30, 2003, Congress enacted the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, (the "PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650

(2003), which changed the standard of review we employ in reviewing a departure decision. Under the PROTECT Act, when a sentence is outside the guideline range, we review de novo the district court's application of the Guidelines to the facts to decide whether the departure was based on a factor that 1) advanced the objectives of federal sentencing policy; 2) was authorized under 18 U.S.C. § 3553(b); and 3) was justified by the facts of the case. *See United States v. Pressley*, 345 F.3d 1205, 1209 n.1 (11th Cir. 2003). Blas was sentenced before the enactment of the PROTECT Act. However, we recently found that the changed standard of review under the PROTECT Act shall be applied retroactively. *See United States v. Saucedo-Patino*, --- F.3d ----, 2004 WL 117766 at *2 (11th Cir. Jan. 27, 2004).

I

Blas first argues that the district court erred in applying a two-level specific offense characteristic for his misrepresentation. He argues that 1) while he initially told the victim that he was eighteen years old, he informed her of his real age before the relationship became sexual; 2) the government failed to meet its burden by proving otherwise; and 3) his misrepresentation did not "compel" the prohibited sexual conduct.

Application Note 4 of § 2A3.2 provides that a two-level enhancement may apply when a defendant misrepresents his "name, age, occupation, gender, or status, as long as the misrepresentation was made with the intent to . . . persuade, induce, entice, or coerce the victim to engage in prohibited sexual conduct." § 2A3.2, cmt. n.4.

The finding that Blas misrepresented his age in contacts with Victim 1 as a means of gaining her confidence and trust, if nothing more, was not clearly erroneous, particularly in light of Blas's admission as to his intent. While it could be the case that a finding that a perpetrator's misrepresentation of his age in order to gain a victim's trust and confidence would be sufficient to justify an enhancement under § 2A3.2, we have not yet fully considered the issue. However, we need not reach the question. In this case, the district court departed upward to 180 months. *See* Tr. Sent. Hr'g at 52. If the upward departure was proper, any error in the application of § 2A3.2 would have yielded the same result and thus have been harmless. In such a case, a remand for resentencing on the § 2A3.2 issue would not be required. *See Williams v. United States*, 503 U.S. 193, 203 (1992). As such, we must turn to the question of whether the district court's upward departure was reasonable.

II

In arguing that the district court erred in applying an upward departure for extreme conduct, Blas argues that 1) the reasons given for the upward departure were already taken into consideration in formulating the guidelines; 2) even if the departure was applicable, it was unwarranted; and 3) that the amount of departure from the guideline range was unreasonable.

One basis on which the district court may upwardly depart from the Guidelines is "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim." § 5K2.8. Examples of extreme conduct include torture, gratuitous infliction of injury, or prolonging pain or humiliation. *See id.*

Likewise, a district court may upwardly depart if the case is atypical. *See* § 5K2.0. Departures under § 5K2.0 are "reserved for 'unusual' cases where there is something atypical about the defendant or the circumstances surrounding the commission of the crime which significantly differ from the normal or 'heartland' conduct in the commission of the crime." *United States v. Gonzalez-Lopez*, 911 F.2d 542, 549 (11th Cir. 1990) (quoting *United States v. Williams*, 891 F.2d 962, 964 (1st Cir. 1989)).

We find that both §§ 5K2.8 and 5K2.0 separately justify an upward departure in this case.[3] First, we strain to determine how Blas's knowingly subjecting an adolescent to a communicable and potentially fatal, incurable disease through several sexual acts – and neglecting to notify her of his condition – could be anything other than "unusually heinous, cruel, brutal or degrading." Moreover, we have not yet encountered a case with a similar factual backdrop, and like the district court, we cannot identify any other reported federal cases in which an HIV-infected defendant actively sought out – and was successful in securing – sexual contact with at least one minor. Blas's actions with regard to his young victim were incredibly risky and dangerous, and presented circumstances that clearly were not taken into consideration in formulating the applicable guidelines. We therefore find that a departure in this instance advanced the objectives of federal policy, was authorized by statute, and was justified.

---

[3] As to this issue, we reject Blas's suggestion that the district court abused its discretion by relying upon "impermissible duplicative considerations" and thus relying on the same conduct to depart upward on two different grounds and not adequately stating its reasons for each individual basis. The district court found, as we do today, that both sections 5K2.8 and 5K2.0 served as *alternative* bases for justifying a departure in this case. Because each departure, taken alone, would have been appropriate, and the district court sufficiently indicated its reasons for departure, Blas's argument is to no avail. *See United States v. Hersh*, 297 F.3d 1233, 1251 (11th Cir. 2002) (noting that "the district court offered three independent and altogether sufficient reasons justifying its upward departure"), *cert. denied*, 537 U.S. 1217 (2003).

Finally, we reject Blas's argument that the district court abused its discretion by imposing a seven-level departure. The extent of a district court's departure from the Guidelines must be reasonable. *See United States v. Melvin*, 187 F.3d 1316, 1322 (11th Cir. 1999). When a sentencing court departs from the Guidelines, a reviewing court determines the reasonableness of the departure in light of the factors to be considered in imposing the sentence, and the reasons the district court provided for departing. *See id.* at 1322-23. Among the factors a sentencing court must consider are the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense. *See* 18 U.S.C. § 3553(a).

In other circumstances in which the facts supported departure, we have found sentences equal to or within the statutory maximum to be reasonable. *See, e.g. Melvin*, 187 F.3d at 1323 (departure reasonable where sentence was below maximum); *United States v. Garrison*, 133 F.3d 831, 853 (11th Cir. 1998) (departure increasing fine to statutory maximum reasonable). In light of the nature and circumstances of Blas's offense, we find the sentence to have been reasonable.

### Conclusion

Seeing no error, we affirm the decision of the district court.

**AFFIRMED.**