[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 21, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13458

_____

D. C. Docket No. 03-00191-CR-C-S

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

MICHAEL MARTIN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 21, 2005)

Before BLACK and HULL, Circuit Judges, and O'KELLEY[*], District Judge.

PER CURIAM:

_____

[*]Honorable William C. O'Kelley, United States District Judge for the Northern District
of Georgia, sitting by designation.

Defendant-appellee Michael Martin, a former HealthSouth Corporation ("HealthSouth") executive, pled guilty to conspiracy to commit securities fraud and mail fraud and falsify books and records, in violation of 18 U.S.C. § 371, and falsifying books and records, in violation of 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78ff, 17 C.F.R. § 240.13b2-1, and 18 U.S.C. § 2. At sentencing, the district court properly calculated the guidelines sentence range as 108 to 135 months' imprisonment. The district court then granted the government's § 5K1.1 motion for downward departure based on Martin's substantial assistance. Instead of departing to 62 months' imprisonment, as recommended by the government, the district court imposed a sentence of 60 months' probation. The government now appeals the extent of the district court's downward departure. After review and oral argument, we vacate Martin's sentence in its entirety and remand this case to the district court for resentencing.

## I. BACKGROUND

### A. Factual Background

From 1996 through March 2003, a group of HealthSouth officers conspired to artificially inflate HealthSouth's reported earnings, earnings per share, and overall financial condition. As a result, HealthSouth's public financial records overstated its assets by hundreds of millions of dollars, and public investors

2

purchased overvalued shares of HealthSouth's stock. According to the presentence investigation report ("PSI") prepared in this case, the approximate amount of the loss to HealthSouth investors was $1.4 billion.

Defendant Martin was employed by HealthSouth from 1989 to 2000, and served as its Chief Financial Officer ("CFO") from 1997 to 2000. During his tenure as CFO, Martin was aware that HealthSouth's earnings would not meet expectation. According to Martin, at the direction of the Chief Executive Officer ("CEO"), Martin falsified numbers to inflate HealthSouth's stated earnings to meet expectation. During the period in which Martin served as CFO, he knowingly falsified the numbers virtually every month. Martin repeatedly discussed with the CEO the fact that the income statements provided to the Securities and Exchange Commission ("SEC") and the investors were inaccurate. Martin nevertheless signed HealthSouth's 10-Q and 10-K forms from 1997 to 1999, with the knowledge that the attached financial statements misrepresented the company's financial condition.

## B. Procedural History

On April 8, 2003, the government filed a three-count information against Martin, charging him with: (1) one count of conspiracy to commit securities fraud and mail fraud and falsify books and records, in violation of 18 U.S.C. § 371

3

(Count One); and (2) one count of falsifying books, records, and accounts, in violation of 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78ff, 17 C.F.R. § 240.13b2-1, and 18 U.S.C. § 2 (Count Two). The information also included a forfeiture count (Count Three). Pursuant to a plea agreement, Martin pled guilty to all three counts.

The PSI indicated that Martin's offense level was 31 and his criminal history category was I, resulting in a guidelines sentence range of 108 to 135 months' imprisonment.

On June 16, 2004, the government filed a motion for downward departure pursuant to U.S.S.G. § 5K1.1 based on Martin's substantial assistance. In that motion, the government explained that "[f]rom the discovery of the defendant's participation in the conspiracy," Martin had been truthful and cooperated "without hesitation," had been available "on a continuous and regular basis," and had "provided valuable assistance in helping the United States, HealthSouth, and the forensic auditor discover, in an expeditious manner, the varied ways in which the massive fraud at HealthSouth was conducted." Specifically, the motion explained that Martin "provided direct evidence of the former CEO's knowledge of the fraud at HealthSouth," including "evidence of direct conversations about the fraud with the former CEO." The government's motion further stated that "[t]he defendant's

4

assistance has aided both the securing of guilty pleas from other co-conspirators and the investigation of other individuals yet to be prosecuted," and that Martin's "immediate cooperation allowed the HealthSouth case to be prosecuted at a pace which, on a relative basis, constitutes swift and efficient enforcement of the United States' criminal laws."

On June 19, 2004, the district court held a sentencing hearing. The district court adopted the PSI's calculations that Martin's offense level was 31, his criminal history category was I, and his guidelines sentence range was 108 to 135 months' imprisonment. The district court then heard from the government about its § 5K1.1 motion. The government described Martin's assistance as valuable, and, in response to the district court's questions, clarified that of the HealthSouth defendants from whom the district court had taken guilty pleas, Martin and one other defendant had direct connections with the former HealthSouth CEO. The government also explained that Martin had tried to talk the CEO into ending the fraudulent conduct and, when those efforts failed, resigned from HealthSouth in 2000. The government further described Martin's assistance as "equal to or greater than the assistance" provided by others who had come before the Court to date.

At that time, the district court announced that it would depart downward from level 31 to level 10, which, when combined with a criminal history category

I, yielded a sentence of 6 to 12 months' imprisonment. The district court then heard Martin's mitigation arguments, including testimony from counsel for the victims, who described Martin's unusual cooperation not only with the government but also with the victims of the fraud.

In response, the government argued that, while Martin's assistance was valuable, Martin nevertheless was "the most culpable of those who have been sentenced to date," that "[h]e was the most senior officer, he had the most authority, and he was involved the longest," and that "he obtained substantial income and status, social status, from this position at HealthSouth," at a huge loss to the victims. The government further stated, with regard to the need for deterrence:

> Finally, Your Honor, you asked a question as to why someone like Mr. Martin would do something like this. I would suggest that part of the reason was the culture, the corporate culture, that existed at HealthSouth during that period of time. Our fear is that that corporate culture existed in many, many other corporations; and perhaps exists today in many other corporations. We suggest that a light sentence does nothing to [a]ffect that corporate culture. What I'm speaking of, of course, is the deterrent value of a sentence in this case.

The government also objected to the district court's decision to depart downward to level 10. Instead, the government suggested that a level 25 and sentence of 62 months' imprisonment would be appropriate. In the event that the district court decided to depart to a level 10 over its objection, the government recommended the

6

maximum possible sentence in that range.

The district court then engaged in the following dialogue with the
government:

| THE COURT: | And were I to impose the sentence that the government recommends, the government would retain the right at the end of the [former CEO] trial to make a motion for a further reduction of Mr. Martin's sentence, which might include probation? |
|---|---|
| MR. RASMUSSEN: | It could theoretically include probation, Your Honor. However, the factors that I've listed today would militate against that. So I cannot – I hesitate to commit that we would – |
| THE COURT: | But you would have the – |
| MR. RASMUSSEN: | – we would have the authority. |
| THE COURT: | – you would have the authority to do it? |
| MR. RASMUSSEN: | Yes, sir. Yes, sir. So we would like to make sure that – |
| THE COURT: | So it may be a question of whether you're going to grant probation or I'm going to do it. |

The district court then summarily imposed a sentence of 60 months'
probation with a special condition of 6 months' home detention on each of Counts
One and Two, to run concurrently. The government objected to the reasonableness
of the extent of the departure.

In its written judgment, the district court checked the box stating that the
downward departure was "based on 5K1.1 motion of the government based on the

defendant's substantial assistance," and offered no further reasons.

The government timely appealed the district court's downward departure.

## II. DISCUSSION

On appeal, the government argues that: (1) the extent of the downward departure and resulting sentence were unjustified and unreasonable; and (2) that the district court failed to adequately and specifically state the reasons for its departure.[1]

Section 5K1.1 of the United States Sentencing Guidelines specifies that the district court may depart downward based on the defendant's substantial assistance

> <u>for reasons stated</u> that may include, but are not limited to, consideration of the following factors:
> (1)    the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
> (2)    the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
> (3)    the nature and extent of the defendant's assistance;
> (4)    any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
> (5)    the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a) (emphasis added).  The commentary to § 5K1.1 recognizes

that "the [n]ature, extent, and significance of assistance can involve a broad

---

[1] We review the extent of a departure for an abuse of discretion.  See United States v. Blas, 360 F.3d 1268, 1274 (11th Cir. 2004).

spectrum of conduct that must be evaluated by the court on an individual basis," and thus that latitude is afforded the sentencing judge to reduce a sentence based on "variable relevant factors." U.S.S.G. § 5K1.1 comment. (backg'd.). "The sentencing judge must, however, state the reasons for reducing a sentence under this section." Id. (citing 18 U.S.C. § 3553(c)) (emphasis added).[2] Thus, the guidelines require that the district court's stated reasons must be individualized to the defendant based on the relevant factors and more specific than a simple statement that the reduction is based on the defendant's substantial assistance. Further, the commentary to § 5K1.1 requires the sentencing court to give "substantial weight . . . to the government's evaluation of the extent of the defendant's assistance . . . ." U.S.S.G. § 5K1.1, comment. n.3.

The government did not raise any Booker issue in its appeal, and thus there is no Booker-type issue that we must review in this appeal. Rather, this appeal concerns only the application of § 5K1.1 of the guidelines to Martin's sentence.[3]

---

[2]Pursuant to 18 U.S.C. § 3553(c), if the district court imposes a sentence "outside the [guidelines] range, . . . the specific reason for the imposition of a sentence different from that described, . . . must also be stated with specificity in the written order of judgment and commitment . . . ."

[3]Martin was sentenced prior to the Supreme Court's decision in United States v. Booker, — U.S. —, 125 S. Ct. 738 (2005). Although there is no Booker issue that this Court must review in this appeal, Booker will come into play at resentencing. Accordingly, while the district court will not be bound by the guidelines on remand, it first must correctly determine Martin's guidelines sentence, including any departures permitted under the guidelines, and then impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (stating that "the Supreme

9

This Court reviews a downward departure from the guidelines range for "reasonableness." See United States v. Blas, 360 F.3d 1268, 1274 (11th Cir. 2004). In Blas, we explained that "a reviewing court determines the reasonableness of the departure in light of the factors to be considered in imposing the sentence and the reasons the district court provided for departing." Id.; see also Williams v. United States, 503 U.S. 193, 203, 112 S. Ct. 1112, 1121 (1992). "The district court's reasons must be sufficiently specific so that an appellate court can engage in the meaningful review envisioned by the Sentencing Guidelines." United States v. Suarez, 939 F.2d 929, 933 (11th Cir. 1991). Although we need not decide whether the district court must discuss each of the five factors set forth in § 5K1.1, we conclude the district court must, at a minimum, give some indication of the § 5K1.1 factors upon which it relies and the reasons for the extent of the departure.

Here, the district court granted Martin an extraordinary departure, departing downward by 21 levels and eliminating a 108 to 135-month term of

Court concluded in Booker that district courts must still consider the Guidelines in determining a defendant's sentence," and that remand is required in any case in which the sentence was imposed as a result of an incorrect guidelines application (citation omitted)). If the district court imposes a sentence outside the guidelines range, it must state the reasons for the imposition of that sentence. 18 U.S.C. § 3553(c).

imprisonment.[4]  Yet the district court failed to specify any reasons, either orally or in his written statement of reasons, for this extraordinary departure.  It is unclear from the record (1) whether the district court relied upon permissible factors[5] and (2) if so, whether the extent of the departure was reasonable.  As a result, the record in this case is incapable of meaningful appellate review.  "Although the district court has broad discretion in determining the extent of a downward departure, that discretion is not without limits, and appellate review is not an empty exercise."  United States v. Dalton, 404 F.3d 1029, 1034 (8th Cir. 2005). Particularly in light of the extraordinary departure in this case, we will not presume that the extent of the departure was reasonable.  See id. at 1033.[6]

---

[4]Martin argues that this Court cannot review the reasonableness of the district court's downward departure because the government invited the error.  We reject this argument.  The government moved the district court to depart downward based on Martin's substantial assistance.  The government does not challenge the district court's decision to depart.  Rather, the government challenges the extent of the departure as unreasonable.  The government did not invite the extent of the departure granted in this case, and in fact vigorously objected to it in the district court.

[5]There is some indication in the record that the district court's extraordinary departure possibly was based in part on its view that the government could, or even would, later seek a further reduction of Martin's sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure – an impermissible basis for a § 5K1.1 departure.  However, because the district court failed to provide any reasons for the extent of its departure, we cannot determine on this record whether the district court's basis for departure was permissible.

[6]We reject Martin's argument that we must affirm because the government did not object in the district court to the district court's failure to specify the reasons for its departure.  The government did object in the district court to the unreasonableness of the extent of the departure and has preserved that objection on appeal, and this Court cannot determine the reasonableness issue without knowing the reasons for the departure.

Accordingly, we vacate Martin's sentence and remand this case to the district court for resentencing consistent with this opinion and with the Supreme Court's decision in <u>Booker</u>.

**VACATED AND REMANDED.**