[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 21, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13456

_____

D. C. Docket No. 03-00374-CR-C-S

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

RICHARD E. BOTTS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 21, 2005)

Before BLACK and HULL, Circuit Judges, and O'KELLEY[*], District Judge.

PER CURIAM:

_____

[*]Honorable William C. O'Kelley, United States District Judge for the Northern District of Georgia, sitting by designation.

Defendant-appellee Richard E. Botts, a former HealthSouth Corporation ("HealthSouth") executive, pled guilty to conspiracy to commit securities fraud and mail fraud and falsify books and records, in violation of 18 U.S.C. § 371. At sentencing, the district court properly calculated the guidelines sentence as 60 months' imprisonment. The district court then granted the government's § 5K1.1 motion for downward departure based on Botts's substantial assistance. Instead of departing to 40 months' imprisonment, as recommended by the government, the district court imposed a sentence of probation. The government now appeals the extent of the district court's downward departure. After review and oral argument, we vacate Botts's sentence in its entirety and remand this case to the district court for resentencing.

## I. BACKGROUND

### A. Factual Background

From 1988 to 2003, Defendant Botts was employed in HealthSouth's tax department. In 1998, Botts was promoted to the position of Senior Vice President for Tax. In that position, Botts was responsible for HealthSouth's tax returns and for providing information to taxing authorities.

From 1996 through March 2003, a group of HealthSouth officers conspired to artificially inflate HealthSouth's reported earnings, earnings per share, and

2

overall financial condition. As a result, HealthSouth's public financial records overstated its assets by hundreds of millions of dollars, and public investors purchased overvalued shares of HealthSouth's stock. According to the presentence investigation report ("PSI") prepared in this case, the approximate amount of the loss to HealthSouth investors was $1.4 billion.

Botts became aware of the conspiracy in 2000, when he was informed that fictitious assets appeared on HealthSouth's books. Thereafter, Botts provided auditors with asset schedules that he knew included phony assets. In addition, in 2001 and 2002, Botts prepared and submitted HealthSouth tax returns that he knew included material, false information about HealthSouth's taxable income, depreciation deductions, and assets. Botts, or someone acting at Botts's direction, placed the fraudulent tax returns in the United States mail.

## B.  Procedural History

On July 31, 2003, the government filed a three-count information against Botts. The information charged Botts with: (1) conspiracy to commit securities fraud (a violation of 15 U.S.C. §§ 78m(b)(2)(A) & (B), and 17 C.F.R. §§ 240.13a-1, 13a-13 & 13b2-2 ), falsify books and records (a violation of 15 U.S.C. §§ 78m(b)(2)(A) & (B), 78m(b)(5) and 78ff), and commit mail fraud (a violation of 18 U.S.C. § 1341), all in violation of 18 U.S.C. § 371 (Count One); and (2) mail

3

fraud, in violation of 18 U.S.C. §§ 1341 and 1342 (Count Two). The information

also included a forfeiture count (Count Three). On August 27, 2003, Botts pled

guilty to all three counts of the information pursuant to a plea agreement.[1]

The PSI indicated that Botts's total offense level was 34 and his criminal

history category was I, which ordinarily would yield a guidelines range of 151 to

188 months' imprisonment. However, the statutory maximum sentence for Botts's

offense was 60 months' imprisonment. As a result, the PSI assessed a guidelines

sentence of 60 months' imprisonment pursuant to U.S.S.G. § 5G1.1(a).[2]

On June 1, 2004, the government filed a motion for downward departure

under U.S.S.G. § 5K1.1 based on Botts's substantial assistance. In that motion, the

government explained that "[f]rom the discovery of the defendant's participation in

the conspiracy," Botts had been truthful and cooperated "without hesitation," had

been available "on a continuous and regular basis," and had "provided invaluable

assistance in helping the United States, HealthSouth, and the forensic auditor

discover, in an expeditious manner, the varied ways in which the fraud was

conducted." The government's motion further stated that "[t]he defendant's

---

[1]Count Two of the information subsequently was dismissed and Botts's guilty plea on Count Two was withdrawn.

[2]U.S.S.G. § 5G1.1(a) states: "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."

4

assistance has facilitated both the securing of guilty pleas from other co-conspirators and the prosecution of other individuals yet to be convicted," and that Botts's "immediate cooperation has allowed the HealthSouth case to be prosecuted at a pace which, on a relative basis, constitutes swift and efficient enforcement of the United States' criminal laws."

At the June 2, 2004, sentencing hearing, the district court found, in accordance with the PSI, that the offense level was 34 and Botts's criminal history category was I, yielding a guidelines range of 60 months' imprisonment. The government then presented its motion for downward departure, and requested that the district court sentence Botts to 40 months' imprisonment. While the government sought a reduction in Botts's 60-month sentence as a result of his cooperation, it argued that his conduct merited a substantial prison term of 40 months, as follows:

> All said, Your Honor, the government is compelled in this case to recommend a substantial term of imprisonment and we would ask the Court to depart downward from the maximum sentence of 60 months to a sentence of 40 months imprisonment. That is the term of imprisonment which the government believes is reasonable to indicate the seriousness of this offense, to reflect punishment to this defendant for his conduct.
>
> I might add, Your Honor, this was not one of the individuals who walked in and voluntarily cooperated with the government, before we knew about the fraud. Yes, after other individuals came in and disclosed to the government that there was a massive accounting fraud underway at HealthSouth, Mr. Botts did come in and admit his

5

participation in that conspiracy.

But, he made a choice, Your Honor, and that was when he was confronted with the horrifying facts of this accounting fraud, instead of reporting it, he chose to become a member fo the conspiracy.

The district court then engaged in the following dialogue with the government:

THE COURT:    Well, you're not suggesting that anything less than 40 months would be unreasonable, are you?

MR. WIEDIS:    Your honor, that is the government's position.

THE COURT:    So what you're saying is that even if he testifies, as I expect he will, in the other cases and cooperates fully, the government would not plan on filing a motion for a downward departure after he's testified.

MR. WIEDIS:    I know that the government might avail itself of the Rule 35 of the Federal Rules of Criminal Procedure and make a motion for a further downward departure.

THE COURT:    So the government would have that option to in fact, after he testifies, ask that he be placed on probation?

MR. WIEDIS:    The law provides an opportunity for the government to make a motion for a further reduction in sentence after somebody testifies. That's correct.

The district court then heard from Botts's counsel, who outlined Botts's role in the conspiracy, the extent of his cooperation, and his character and background, and requested probation.

After hearing from Botts's counsel, the district court departed downward to a level 8, which yielded a guidelines imprisonment range of 0 to 6 months. The

6

government requested the maximum term of 6 months' imprisonment. The district court then imposed a sentence of 60 months' probation, with a special condition of 6 months' home detention. The government objected to the reasonableness of the § 5K1.1 departure in the district court.

In its written judgment, the district court checked the box stating that the downward departure was "based on 5K1.1 motion of the government based on the defendant's substantial assistance," and offered no further reasons.

The government timely appealed the district court's downward departure.

## II. DISCUSSION

On appeal, the government argues that: (1) the extent of the downward departure and resulting sentence were unjustified and unreasonable; and (2) that the district court failed to adequately and specifically state the reasons for its departure.[3]

Section 5K1.1 of the United States Sentencing Guidelines specifies that the district court may depart downward based on the defendant's substantial assistance

> for reasons stated that may include, but are not limited to, consideration of the following factors:
> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

---

[3]We review the extent of a departure for an abuse of discretion. See United States v. Blas, 360 F.3d 1268, 1274 (11th Cir. 2004).

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a) (emphasis added). The commentary to § 5K1.1 recognizes that "[t]he nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis," and thus that latitude is afforded the sentencing judge to reduce a sentence based on "variable relevant factors." U.S.S.G. § 5K1.1 comment. (backg'd.). "The sentencing judge <u>must</u>, however, <u>state the reasons</u> for reducing a sentence under this section." <u>Id.</u> (citing 18 U.S.C. § 3553(c)) (emphasis added).[4] Thus, the guidelines require that the district court's stated reasons must be individualized to the defendant based on the relevant factors and more specific than a simple statement that the reduction is based on the defendant's substantial assistance. Further, the commentary to § 5K1.1 requires the sentencing court to give "substantial weight . . . to the government's evaluation of the extent of the defendant's assistance . . . ." U.S.S.G. § 5K1.1, comment. n.3.

---

[4]Pursuant to 18 U.S.C. § 3553(c), if the district court imposes a sentence "outside the [guidelines] range, . . . the specific reason for the imposition of a sentence different from that described, . . . must also be stated with specificity in the written order of judgment and commitment . . . ."

The government did not raise any Booker issue in its appeal, and thus there is no Booker-type issue that we must review in this appeal. Rather, this appeal concerns only the application of § 5K1.1 of the guidelines to Botts's sentence.[5] This Court reviews a downward departure from the guidelines range for "reasonableness." See United States v. Blas, 360 F.3d 1268, 1274 (11th Cir. 2004). In Blas, we explained that "a reviewing court determines the reasonableness of the departure in light of the factors to be considered in imposing the sentence and the reasons the district court provided for departing." Id.; see also Williams v. United States, 503 U.S. 193, 203, 112 S. Ct. 1112, 1121 (1992). "The district court's reasons must be sufficiently specific so that an appellate court can engage in the meaningful review envisioned by the Sentencing Guidelines." United States v. Suarez, 939 F.2d 929, 933 (11th Cir. 1991). Although we need not decide whether the district court must discuss each of the five factors set forth

[5]Botts was sentenced prior to the Supreme Court's decision in United States v. Booker, — U.S. —, 125 S. Ct. 738 (2005). Although there is no Booker issue that this Court must review in this appeal, Booker will come into play at resentencing. Accordingly, while the district court will not be bound by the guidelines on remand, it first must correctly determine Botts's guidelines sentence, including any departures permitted under the guidelines, and then impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (stating that "the Supreme Court concluded in Booker that district courts must still consider the Guidelines in determining a defendant's sentence," and that remand is required in any case in which the sentence was imposed as a result of an incorrect guidelines application (citation omitted)). If the district court imposes a sentence outside the guidelines range, it must state the reasons for the imposition of that sentence. 18 U.S.C. § 3553(c).

in § 5K1.1, we conclude the district court must, at a minimum, give some indication of the § 5K1.1 factors upon which it relies and the reasons for the extent of the departure.

Here, the district court granted Botts an extraordinary departure, departing downward by 26 levels and eliminating a 60-month term of imprisonment. Yet the district court failed to specify any reasons, either orally or in his written statement of reasons, for this extraordinary departure. It is unclear from the record (1) whether the district court relied upon permissible factors[6] and (2) if so, whether the extent of the departure was reasonable. As a result, the record in this case is incapable of meaningful appellate review. "Although the district court has broad discretion in determining the extent of a downward departure, that discretion is not without limits, and appellate review is not an empty exercise." United States v. Dalton, 404 F.3d 1029, 1034 (8th Cir. 2005). Particularly in light of the extraordinary departure in this case, we will not presume that the extent of the departure was reasonable. See id. at 1033.[7]

_____

[6]There is some indication in the record that the district court's extraordinary departure possibly was based in part on its view that the government could, or even would, later seek a further reduction of Botts's sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure – an impermissible basis for a § 5K1.1 departure. However, because the district court failed to provide any reasons for the extent of its departure, we cannot determine on this record whether the district court's basis for departure was permissible.

[7]We reject Botts's argument that we must affirm because the government did not object in the district court to the district court's failure to specify the reasons for its departure. The

Accordingly, we vacate Botts's sentence and remand this case to the district court for resentencing consistent with this opinion and with the Supreme Court's decision in <u>Booker</u>.

**VACATED AND REMANDED.**

---

government did object in the district court to the unreasonableness of the extent of the departure and has preserved that objection on appeal, and this Court cannot determine the reasonableness issue without knowing the reasons for the departure.