[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15577
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-80099-CR-KAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARION YARBROUGH,
a.k.a. Blockburnal,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 22, 2009)

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Marion Yarbrough appeals his 480-month sentence,

for transporting a minor in interstate commerce for the purpose of engaging in sexual activity, in violation of 18 U.S.C. §§ 2423(a) and 2. After review, we affirm.

## I. BACKGROUND

### A. Offense Conduct

Using a screen name, Yarbrough communicated with a fifteen-year-old girl via the Internet and cellular telephone. Yarbrough told the girl that he was 21 years old (when in fact he was 34 years old). Yarbrough told the girl he loved her and repeatedly asked the girl to visit him in Kentucky. The girl, who was having problems at home, eventually agreed and, through an intermediary, Yarbrough purchased her a bus ticket.

On April 24, 2007, the girl followed Yarbrough's instructions and boarded a bus in West Palm Beach, Florida and debarked in Nashville, Tennessee, where Yarbrough met her. Yarbrough then drove the girl to his house in Kentucky.

Over the next fifteen days, Yarbrough engaged in sexual intercourse with the girl, including vaginal, anal and oral sex, and used force on at least one occasion. These sexual encounters occurred twice per day on all but a couple of the days they were together. Yarbrough did not wear a condom and told the girl he wanted to get her pregnant, despite her objections.

2

The girl's mother reported her missing to the Federal Bureau of Investigation ("FBI"). Working with law enforcement in Palm Beach County and Kentucky, the FBI eventually located the girl, who indicated that Yarbrough had fled on foot. Yarbrough was found during a search of the area.

In an interview with police, the girl said that she felt forced and intimidated into the sexual encounters, which were painful. Although the girl told Yarbrough it was painful and to stop, he did not. She also put her thighs together to try to stop Yarbrough, who told her to open her legs or it would hurt worse. A subsequent gynecological exam was consistent with forced and repeated sexual activity.

## B. PSI

The pre-sentence investigation report ("PSI") recommended the following: (1) a base offense level of 30, pursuant to U.S.S.G. § 2A3.1(a)(2); (2) a four-level increase, pursuant to U.S.S.G. § 2A3.1(b)(1), because the offense involved conduct described in 18 U.S.C. § 2241(a) or (b) (the aggravated sexual abuse statute); (3) a two-level increase, pursuant to U.S.S.G. § 2A3.1(b)(4), because the victim sustained serious bodily injury; (4) a two-level increase, pursuant to U.S.S.G. § 2A3.1(b)(2)(B), because the victim was over 12 but less than 16 years old; and (5) a two-level increase, pursuant to U.S.S.G. § 2A3.1(b)(6)(B), because the offense involved the use of a computer or an interactive computer service. These

3

enhancements resulted in a total offense level of 40.

However, the PSI also concluded that Yarbrough was a career offender, pursuant to U.S.S.G. § 4B1.1, because he had two prior felony convictions under Kentucky law for fleeing or evading the police in the first degree. Because the statutory maximum penalty for Yarbrough's offense was life imprisonment, Yarbrough's status as a career offender gave him an offense level of 37 under the guidelines. See U.S.S.G. § 4B1.1(b)(A). After a three-level reduction for acceptance of responsibility, the PSI calculated an adjusted offense level of 34. With a criminal history category of VI, the PSI recommended an advisory guidelines range of 360 months' to life imprisonment.

In addition to Yarbrough's two felony fleeing and evading police convictions, the PSI reported the following criminal history: (1) a 1991 assault charge in which Yarbrough was charged with digitally penetrating the vagina of a minor; (2) a 1994 conviction for contributing to the delinquency of a minor; (3) a 1995 conviction for statutory rape of a 13-year-old girl; and (4) several convictions between 1993 and 2005, including driving under the influence, driving with a suspended license and assault. In addition, the PSI reported that, in May 2007, Yarbrough was arrested for the rape of a 12-year-old girl and that the charges remained pending in Kentucky.

4

Yarbrough objected to the PSI challenging the four-level aggravated sexual abuse increase, the two-level serious bodily injury increase and his designation as a career offender. Before sentencing, the parties entered into an agreement whereby Yarbrough agreed to withdraw his objection to the four-level aggravated sexual abuse increase and the government agreed not to seek the two-level serious bodily injury increase. However, the parties continued to dispute whether Yarbrough was a career offender.

## C.    Sentencing

The district court accepted the parties' sentencing agreement, which reduced Yarbrough's offense level from 37 to 35, giving him a revised advisory guidelines range of 292 to 365 months' imprisonment. Yarbrough formally withdrew his career-offender objection, which the district court accepted after confirming with Yarbrough that he was withdrawing that objection knowingly and voluntarily, as follows:

> MR. METZ: I've spent a considerable amount of time yesterday and today researching and speaking with both Probation and the Government, and met with Mr. Yarbrough prior to this hearing, and I'm happy if the Court wants to inquire, but Mr. Yarbrough hereby withdraws any objection to him being characterized as a career criminal offender.
>
> In particular, just so the record's clear, there were two separate indictments that did allege what Florida law and the Eleventh Circuit has interpreted under fleeing and evading as being violent crimes, which would be the elements necessary for the enhancement here.
>
> There's an issue about a collateral attack on the Kentucky

5

statute. I have discussed that with Mr. Yarbrough. After doing so, he, however, agrees that he is in fact and should be characterized as a career criminal offender, and we would withdraw any objection otherwise.

THE COURT: All right. Mr. Yarbrough, it that correct, that you've discussed this other issue with your attorney that's not contained in that sentencing agreement we just talked about, and you understand that you are withdrawing your objections to being categorized as a career offender?

THE DEFENDANT: Yes, sir.

THE COURT: And have you done that willingly and voluntarily?

THE DEFENDANT: Yes, sir.

THE COURT: And did you understand all the issues after discussing them with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And were you under the influence of any drugs, medicine or alcohol at the time that you were having these discussions with your attorney?

THE DEFENDANT: No, sir.

THE COURT: I'm going to find that he's withdrawn that objection, as well.

The district court heard statements from the victim and her mother, who described the effect that Yarbrough's actions had on their lives. Among other things, the victim described the fear and pain she experienced during the ordeal and how she had resorted to drugs and alcohol as a means to escape. She also stated that she now has nightmares, panic attacks and suicidal thoughts and that she has sought counseling from a therapist.

In accordance with its obligations under the plea agreement, the government recommended a sentence at the low end of the advisory guidelines range.

Yarbrough also requested a sentence at the low end of the range, emphasizing that he and the prosecutor had arrived at this joint recommendation after several months of close consideration and negotiation. Yarbrough then personally addressed the district court and briefly apologized to the victim and her family.

The district court prefaced its sentence by explaining that, although it normally deferred to the sentencing agreements reached by parties, it could not do so in light of its consideration of the factors in 18 U.S.C. § 3553(a). The district court emphasized that Yarbrough's offense was "disturbing" and "about as serious . . . [as] we can deal with short of death," that Yarbrough had a history of sexually deviant behavior with respect to minors, and that its sentence had to account for "the harm to the victim, her family and to society at large" and provide Yarbrough with much-needed correctional treatment "to deal with his deviant behaviors." The court also noted that it had to "impose a sentence that [would] avoid unwarranted sentencing disparities among defendants with similar records." After confirming that it had considered the statements of the parties, the PSI, the advisory guidelines range and the § 3553(a) factors, the court imposed an upward variance to 480 months' imprisonment. Yarbrough filed this appeal.

## II. DISCUSSION

On appeal, Yarbrough argues that his 480-month sentence is unreasonable.

7

We review the reasonableness of a sentence for abuse of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). First, we look at whether the district court committed any significant procedural error and then whether the sentence is substantively reasonable under the totality of the circumstances. Id. The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors. United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).[1] "Sentences outside the guidelines are not presumed to be unreasonable, but we may take the extent of any variance into our calculus." United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009).

In his reply brief, Yarbrough argues for the first time that his sentence is procedurally unreasonable because the district court erroneously classified him as a career offender. However, a knowing and affirmative withdrawal of a previously articulated objection constitutes a waiver that precludes appellate review of the alleged error, and the plain error doctrine is inapplicable. See United States v. Horsfall, 552 F.3d 1275, 1283-84 (11th Cir. 2008), cert. denied, 129 S. Ct. 2034

_____

[1]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

(2009); United States v. Masters, 118 F.3d 1524, 1526 (11th Cir. 1997).

Yarbrough affirmatively, voluntarily and unequivocally withdrew his career-offender objection at sentencing. Thus, we decline to address this career offender argument.

Apart from his challenge to his career-offender status, Yarbrough does not take issue with the district court's guidelines calculations. Nor does Yarbrough raise any other procedural error. Rather, Yarbrough argues that the district court's decision to exceed the advisory guidelines range was substantively unreasonable.

We cannot say that the district court abused its discretion in imposing a 480-month sentence, above the advisory guidelines range. The district court stated that it had considered the parties' statements, the PSI, the advisory guidelines range and the § 3553(a) factors. As the district court noted, Yarbrough's crime was especially egregious. Yarbrough lured a vulnerable young girl from her home and took her to another state where, through force and threats, he subjected her to repeated, painful sexual intercourse almost twice daily for over two weeks. In doing so, Yarbrough did not use a condom and told his victim he was trying to impregnate her.[2] As reflected in the statements by the victim and her mother,

_____

[2]The PSI noted that Yarbrough has fathered seven children and that, based on the ages of the children and their mothers reported by Yarbrough, some of the mothers appeared to have been minors when the children were conceived.

Yarbrough's conduct has inflicted significant and long-lasting harm. Further, Yarbrough has a history of sex offenses involving minors and, at the time of sentencing, faced new charges of raping a 12-year-old girl in Kentucky.

Yarbrough's claim that the district court failed to adequately consider the need to avoid unwarranted sentencing disparities is not supported by the record. The district court explicitly acknowledged this factor at sentencing. Furthermore, the cases Yarbrough cites, United States v. Blas, 360 F.3d 1268 (11th Cir. 2004), and United States v. Hersh, 297 F.3d 1233 (11th Cir. 2002), are guidelines departure cases decided prior to United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), and do not support the argument that the variance in this case is unreasonable. See Shaw, 560 F.3d at 1241 (rejecting a similar sentencing disparity argument). In any event, Yarbrough had a significant criminal history and indeed had a criminal history category of VI, while the defendants in Blas and Hersh each had a criminal history category of I. See Blas, 297 F.3d at 1271; Hersh, 297 F.3d at 1240. Thus, Yarbrough does not share a similar record to those defendants and has not shown any unwarranted disparity. See 18 U.S.C. § 3553(a)(6) (instructing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records . . . ").

Given the totality of the circumstances, Yarbrough has not carried his

10

burden to show that the district court's upward variance to 480-months from the advisory guidelines range of 292 to 365 months was unreasonable.

**AFFIRMED.**