[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-13216
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 26, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:09-cr-00399-SCB-AEP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATHANIEL HARGROVE,
a.k.a. Frog,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 26, 2011)

Before HULL, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Nathaniel Hargrove appeals his convictions and sentences for four counts of knowingly and intentionally distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1). After a jury found Hargrove guilty, the district court imposed concurrent sentences of 240 months. On appeal, Hargrove argues that (1) the district court erred by denying his motion for a judgment of acquittal because he reasonably believed he acted under the authority of law enforcement; and (2) his sentence is substantively unreasonable. After a review of the record, we affirm.

I. Background

On April 9, 2009, the Hillsborough Country Sheriff's office placed Detective Roberto Ramirez and Deputy Gus Garcia in the Plant City area as undercover officers. An unidentified man approached the officers at a convenience store and Ramirez asked to purchase marijuana. The man took the undercover officers to a residence where he introduced them to "Frog," whom police later identified as Hargrove. Hargrove offered to sell Ramirez crack cocaine and Ramirez agreed.

Ramirez and Garcia accompanied Hargrove to another location where Hargrove exchanged Ramirez's $200 for crack. Hargrove also requested a broker's fee of $20, which Ramirez paid. The men returned to the residence where Hargrove and Ramirez exchanged phone numbers. At no time did the officers

inform Hargrove that they were with the police.

On April 14, Ramirez called Hargrove to purchase more crack. Ramirez and undercover officer David Evarts met Hargrove and exchanged $500 for crack. Although Ramirez had requested 14 grams of crack, the parties agree that the amount Ramirez received in this transaction was 7 grams. To account for the shortage, Hargrove did not charge his broker's fee. Hargrove also promised to supply more crack to make up for the shortage.

Throughout the interaction with Hargrove, the undercover officers continued to act as drug dealers. During the meeting, Hargrove expressed concern about police surveillance and pointed to the lookouts he used. Hargrove asked questions about Ramirez's drug business and encouraged them to keep their business coming. Hargrove also showed the officers a block of crack he kept for his own personal use.

On April 22, Ramirez called Hargrove to make another purchase of crack. Ramirez, Garcia, and Evarts accompanied Hargrove to a new location because Hargrove's usual source was unavailable. After waiting for the drugs to be ready, the officers watched as Hargrove exchanged the money for the drugs. Garcia paid Hargrove his broker's fee. Hargrove then took the officers to another residence where the officers observed Hargrove sell methadone pills.

On May 12, Evarts contacted Hargrove to purchase crack for his customers. When Evarts met Hargrove to make the purchase, he was accompanied by two other undercover officers that Hargrove did not know. Hargrove became uncomfortable until Evarts introduced the two officers as his girlfriend and her brother. Evarts noted that Hargrove's behavior was different this time, but he attributed it to the new people involved.

The officers went with Hargrove to the same residence as the last transaction to make the exchange, but Hargrove instructed them to drive to a gas station and wait for his call. At the gas station, Evarts received a call from Hargrove that there was an extra $50 worth of crack available. Evarts instructed Hargrove to purchase it. After the transaction, Hargrove asked Evarts for some of the crack Evarts had purchased. He also showed Evarts some marijuana and told Evarts to buy his marijuana from Hargrove only.

These purchases led to Hargrove's four-count indictment. At trial, Hargrove testified that he had a drug problem and suffered from mental health issues. He explained that he had believed the men were undercover officers from the beginning because they addressed him by his street name and knew he had an outstanding warrant. He stated that he believed he had no choice but to cooperate with police. According to Hargrove, the officers would pay him and he would

keep some of the crack for himself. He believed that as long as he cooperated, the officers would not arrest him. Hargrove admitted that he had thirty-two prior felonies and had pleaded guilty to all of them. But, he explained, he was not guilty this time and he had only participated in the deals to avoid prison.[1]

The officers testified that they were unaware of Hargrove's outstanding warrant when they first met him and that Hargrove was not acting as a police informant. They explained that they used none of the normal procedures to handle Hargrove like an informant; they did not obtain approval from their supervisor, they did not search him for contraband before or after each transaction, they did not retain control over Hargrove at all times, and they would not have permitted Hargrove to purchase or possess drugs for his own use.

The court instructed the jury that if it found Hargrove had a reasonable belief that he was acting under the authority of the police, it could consider that fact. The jury convicted Hargrove on all four counts.

At sentencing, the court grouped all four counts together and set a base offense level of 24 given the 16.4 grams of crack involved in the four transactions. Although Hargrove had numerous prior felonies – thirty-two of them – the district

---

[1] Hargrove moved for judgment of acquittal at the close of the government's case-in-chief and again at the close of all the evidence, thus preserving his challenge to the sufficiency of the evidence.

court concluded that he did not qualify as a career offender under U.S.S.G. § 4B1.1. But Count 2 of the conviction, which related to the April 14 transaction, carried a mandatory minimum sentence of ten years' imprisonment. The district court calculated Hargrove's guidelines range as 120 to 125 months. Neither party objected to the calculations.

The court then turned to the sentencing factors in 18 U.S.C. § 3553(a). The court noted Hargrove's lengthy criminal history and the fact that he had spent most of his life incarcerated and explained that it believed Hargrove was the type of person who should be sentenced to a term of imprisonment higher than the advisory guideline range. Thus, the court stated, it was considering an upward departure under § 4A1.3(b). In response, defense counsel noted Hargrove's drug dependency and mental-health status and argued that the ten-year mandatory minimum sentence would be sufficient deterrent. Hargrove himself apologized to the court and requested the mandatory minimum sentence. After considering the parties' arguments and the § 3553(a) factors, the court determined that an eight-level upward departure in the offense level was warranted to provide deterrence and to protect society. The resulting guidelines range was 210 to 262 months' imprisonment, to which Hargrove objected. The court sentenced Hargrove to 240 months' imprisonment. Hargrove now appeals.

6

II. Discussion

A. Sufficiency of the Evidence

We review *de novo* whether the evidence was sufficient to sustain a conviction. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). A conviction may not be reversed unless no rational jury could find that the evidence established the defendant's guilt beyond a reasonable doubt. *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004). All evidence must be viewed in a light most favorable to the government, and all conflicts of evidence must be resolved in its favor. *See United States v. Frank*, 599 F.3d 1221, 1233 (11th Cir. 2010). We will accept all reasonable inferences tending to support the government's case. *United States v. Williams*, 390 F.3d 1319, 1324 (11th Cir. 2004).

Hargrove argues that he lacked the requisite intent to distribute crack because he believed he was working for law enforcement at the time of the transactions.

To convict Hargrove under § 841(a)(1), the government was required to prove Hargrove's knowing and willful possession and his intent to distribute the controlled substance, as well as his actual transfer thereof. *United States v. Baker*, 432 F.3d 1189, 1233 (11th Cir. 2005). We have recognized an "innocent intent"

defense in respect to § 841(a)(1) charges. *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994). To prevail in this defense, the defendant must show that he lacked the necessary criminal intent to distribute the controlled substance because he honestly believed he performed the illegal acts under lawful authority. Innocent intent is not an affirmative defense, but a means of negating the *mens rea* requirement of the offense. *Id*.

In this case, we conclude that the evidence was sufficient to prove that Hargrove intended to distribute crack cocaine. All of the involved officers operated undercover and never gave Hargrove any reason to suspect they were law enforcement. They acted as if they were drug dealers attempting to obtain crack cocaine in order to resell it to their customers. Further, they did not follow any of the normal regulations or procedures when utilizing a confidential informant.

Moreover, Hargrove's own conduct was inconsistent with a belief that he was operating under the authority of law enforcement. He regularly interacted with the officers as if they were drug dealers. On at least two occasions he took crack cocaine for himself that had been intended for the officers. Hargrove also sold methadone pills while in the officers' presence and showed them various drugs that were intended for sale or personal use.

Credibility questions are the exclusive province of the jury, and we will

8

assume the jury answered them all in a manner supporting its verdicts. *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006). A defendant's own testimony, if disbelieved by the jury, may be considered as substantive evidence of his guilt. *See, e.g., id*. at 1143. Thus, the jury was free to disbelieve Hargrove's testimony that he believed he acted under lawful authority, and find that the testimony supported his guilt. *Thompson*, 473 F.3d at 1143. Accordingly, we affirm Hargrove's convictions.

B. Substantive Reasonableness[2]

We review sentences for reasonableness under a deferential abuse of discretion standard, *Gall v. United States*, 552 U.S. 38, 41 (2007), and the party challenging the sentence has the burden to demonstrate that it is unreasonable, *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). When conducting this review, we must consider the sentence, including the extent of any departure, in light of the record and the 18 U.S.C. § 3553(a) factors. *Talley*, 431 F.3d at 788; *United States v. Blas*, 360 F.3d 1268, 1274 (11th Cir. 2004). We will reverse only if we are left with the definite and firm conviction that the district court committed

---

[2] Hargrove does not argue that the court committed any procedural error in determining his sentence. Therefore, he has abandoned any such claim. *United States v. Smith*, 416 F.3d 1350, 1354 (11th Cir. 2005). We nevertheless conclude that the district court did not abuse its discretion by departing upward under § 4A1.3 based on Hargrove's extensive criminal history.

a clear error of judgment in weighing the § 3553(a) factors so that the sentence fails to achieve the statute's purposes. *United States v. Irey*, 612 F.3d 1160, 1190-94 (11th Cir. 2010) (*en banc*), *petition for cert. filed* (U.S. Nov. 24, 2010) (No. 10-727). Extraordinary justifications are not required for sentences outside the Guideline range. *Gall*, 552 U.S. at 47.

Hargrove's 240-month total sentence is substantively reasonable. The record indicates that the district court considered and heard arguments regarding the § 3553(a) factors. It based its sentence on Hargrove's extensive criminal history and the need to protect the public from future criminal conduct. Further, its total sentence was below the statutory maximum sentence of life imprisonment.

III. Conclusion

Based on the foregoing, we conclude that the district court properly denied Hargrove's motion for a judgment of acquittal and that the 240-month sentence is substantively reasonable.

**AFFIRMED.**